# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | |
|---|---|
| **SAFER HUMAN MEDICINE, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) **Civil Action File No.** |
| **DECATUR COUNTY-BAINBRIDGE** | ) |
| **INDUSTRIAL DEVELOPMENT** | ) |
| **AUTHORITY,** | ) |
| | ) |
| **Defendant.** | ) |

## VERIFIED COMPLAINT

Comes now Plaintiff Safer Human Medicine, Inc. and files this Verified Complaint against Defendant Decatur County-Bainbridge Industrial Development Authority (the "Authority") as follows:

## THE PARTIES

1. Plaintiff is a corporation formed under the laws of the State of Delaware with its principal place of business located at 21 Sheldon Road, Cohasset, Massachusetts.

2. The Authority is a constitutional development authority created under the laws of the State of Georgia, particularly that certain amendment to the Constitution of the State of Georgia, 1968 Ga. Laws 1780, as amended by 1981 Ga. Laws 3482 and as continued by 1985 Ga. Laws 3930, and is an arm and instrumentality of the City of Bainbridge, Georgia, (the "City") and Decatur County, Georgia (the "County").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

4. For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a), Plaintiff is a citizen of Delaware and Massachusetts, and the Authority is a citizen of Georgia.

5. This lawsuit relates to the issuance of up to $300,000,000.00 in aggregate principal amount in revenue bonds by the Authority for the purpose of financing the acquisition, construction, installation, and modification of a group of animal husbandry facilities and other related facilities and other buildings and improvements totaling approximately 1.75 million square feet (the "Project").

6. This lawsuit is between citizens of different states, and the matter in controversy exceeds $75,000.00.

7. The Eleventh Amendment's bar to suits against the States in federal court does not apply to the Authority, as it is an instrumentality of the City and the County, not of the State of Georgia.

8. This Court has personal jurisdiction over the Authority because the Authority is considered to be domiciled in Georgia.

9. Venue is appropriate in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim asserted in this Verified Complaint occurred in Decatur County, Georgia, which lies in the Middle District of Georgia, Albany Division.

## INTRODUCTION AND BACKGROUND

### I. The Bond Resolution and Bond Documents

10. Plaintiff is a company in the business of developing animal-husbandry facilities for the purpose of raising non-human primates for use in medical research.

11. Plaintiff undertook a nationwide search for a location in which to construct a major animal-husbandry facility.

12. Plaintiff ultimately determined to locate its facility in Decatur County, Georgia, as a result of, *inter alia*, Georgia's revenue-bond laws and significant tax advantages being made available to it by the Authority and the other local parties.

13. After significant negotiations between Plaintiff and the Authority, the City, the County, and other public entities (collectively, the "Public Authorities"), the Authority adopted, on December 11, 2023, pursuant to its statutory and constitutional authority, a Bond Resolution, attached hereto without exhibits as **Exhibit A**,[1] by which the Authority agreed to issue its Decatur County-Bainbridge Industrial Development Authority Taxable Revenue Bonds (Project Liberty) Series 2023 (the "Series 2023 Bonds") in the maximum aggregate principal amount of $300,000,000.00.

14. The Authority's vote to adopt the Bond Resolution and to approve the Bond Documents and the other Public Authorities' votes to approve the Bond Documents, including the Project Agreement and the PILOT Agreement, were made at a joint public meeting of all the Public Authorities held on December 11, 2023, which meeting was open to and attended by the public and local press outlets, as publicized by *The Post Searchlight* in its December 11, 2023 article attached hereto as **Exhibit B**.

15. The Bond Resolution further authorized the Authority's execution of certain other documents (hereinafter, collectively, the "Bond Documents"): the Rental Agreement, attached hereto as **Exhibit C**, the Bond Purchase Agreement, attached hereto as **Exhibit D**, the Option Agreement, attached hereto as **Exhibit E**, the Security Deed, attached hereto as **Exhibit F**, the Project Agreement, attached hereto as **Exhibit G**, and the PILOT Agreement, attached hereto as **Exhibit H**.

---

[1] Plaintiff will provide a version of the Bond Resolution with exhibits upon request.

16. Under the Bond Documents and the Bond Resolution, the Authority would issue the Series 2023 Bonds, and Plaintiff would purchase the Series 2023 Bonds.

17. Plaintiff would then purchase real property on which the Project would be situated (the "Project Site") under a purchase sale agreement (the "PSA") with the Authority and then transfer the Project Site back to the Authority.

18. The Authority and Plaintiff would then enter into the Rental Agreement, whereby the Authority would lease the Project Site to Plaintiff as a usufruct, allowing Plaintiff the ability to utilize the Project Site without incurring *ad valorem* tax liability.

19. Ultimately, the Project would result in the creation of more than 260 jobs in the Bainbridge-Decatur County area and result in over $270 million dollars of investment in the local economy.

20. In addition to approving the Bond Resolution, the Authority also approved and executed, on December 11, 2023, pursuant to its statutory and constitutional authority, the Project Agreement and the PILOT Agreement.

21. The Bond Resolution, the Project Agreement, and the PILOT Agreement all contain express representations by the Authority that it had full authorization and power to adopt and/or execute those documents.

22. The Project Agreement states the Authority and Plaintiff entered into the PSA, which the Authority and Plaintiff intend to govern, *inter alia*, the conveyance of the Project Site from the Authority to Plaintiff.

23. The Project Agreement also included various obligations for the Authority, Plaintiff, and others,[2] including representations by the Public Authorities that the City and County had adopted a Level 1 Freeport Tax Exemption, meaning Plaintiff's inventory related to the Project would be exempt from taxation.

24. Under the Project Agreement, the Authority is required to "issue a taxable revenue bond."

25. The Project Agreement also requires the Authority to enter into the Rental Agreement with Plaintiff, and specifically contemplates the execution and delivery of the remainder of the Bond Documents as well.

26. Under the Project Agreement, Plaintiff and the Authority are required to close on the bond transaction, including acquisition of the fee simple interest in any portion of the Project Site under the terms of the PSA and execution of the other Bond Documents, on or before February 29, 2024.

27. If Plaintiff fails to close by that date, the Project Agreement automatically terminates.

28. Under the PILOT Agreement, the Authority and Plaintiff are required, upon the closing of the PSA, to enter into the Rental Agreement, whereby the Authority will lease the Project Site to Plaintiff.

29. The PILOT Agreement and the Rental Agreement contain provisions allowing Plaintiff to obtain significant tax relief related to the Project and make payments in lieu of taxes to the Public Authorities.

---

[2] The City, the County, the Decatur County School District, the Decatur County Tax Commissioner, and the Decatur County Board of Tax Assessors were also parties to the Project Agreement and the PILOT Agreement.

5

30. The value of the real property making up the Project Site is approximately $2,000,000.00.

31. The value of the usufruct interest Plaintiff will obtain under the Rental Agreement exceeds $75,000.00.

32. The value of the tax relief Plaintiff will obtain through the Project exceeds $75,000.00.

33. The value of the payments in lieu of taxes Plaintiff will make to the Public Authorities pursuant to the PILOT Agreement exceeds $75,000.00.

## II.     The Bond Validation Petition and Order

34. Georgia law provides a procedure by which a governmental body, such as the Authority, is to obtain confirmation and validation of a proposed bond issuance. *See* O.C.G.A. § 36-82-74 *et seq.*

35. On December 14, 2023, Joseph K. Mulholland (the "District Attorney"), District Attorney for the South Georgia Judicial Circuit, filed a Petition and Complaint (the "Validation Petition"), attached hereto without exhibits as **Exhibit I**,[3] in the Superior Court of Decatur County, Georgia (the "Superior Court"), requesting the Superior Court issue an order finding the Authority had properly authorized and adopted the Bond Resolution and the Bond Documents and confirming and validating the Bond Resolution and the Bond Documents.

36. The Validation Petition named the Authority and Plaintiff as defendants.

37. On December 14, 2023, the Superior Court issued a Rule Nisi Order, attached hereto as **Exhibit J**, setting a hearing on the Validation Petition for January 2, 2024, and directing

---

[3] Plaintiff will provide a version of the Petition with exhibits upon request.

the Clerk of the Superior Court to have a notice of the hearing published in *The Post Searchlight*, the legal organ of Decatur County, Georgia.

38. On December 14, 2023, the Clerk of the Superior Court issued a notice, attached hereto as **Exhibit K**, explaining the purpose of the hearing and stating "Any citizen of the State of Georgia residing in Decatur County, Georgia, or any other person wherever residing who has a right to object, may intervene and become a party to this proceeding" ("Public Notice").

39. As required by Georgia law, the Public Notice was published in *The Post Searchlight*, the legal organ for the County, on December 20, 2023, and December 27, 2023, as evidenced by that certain General Manager's Affidavit attached hereto as **Exhibit L**.

40. On January 2, 2024, the Superior Court held a hearing on the Validation Petition.

41. No member of the public moved to intervene in the proceeding and no objections to the Validation Petition were made.

42. On January 2, 2024, after conducting the hearing, the Superior Court issued its Bond Validation Order, attached hereto as **Exhibit M**.

43. Plaintiff incorporates the determinations, declarations, orders, and adjudications in the Bond Validation Order as if set forth herein.

44. Among its other conclusions, the Bond Validation Order states that the Bond Resolution and the Bond Documents "are in each and every respect confirmed and validated."

45. Under Georgia law, the Bond Validation Order is conclusive on the validity and enforceability of the Series 2023 Bonds and the Bond Documents.

### III. The Public Authorities' Post-Validation Actions

46. On January 22, 2024, Bruce W. Kirbo, Jr., counsel for the County, sent an email to Plaintiff and others stating he had "come to understand and realize" that the meeting at which the

County's Board of Commissioners had approved the Project Agreement and the PILOT Agreement "was not properly noticed nor posted as a meeting of the Board of Commissioners."

47. Despite entry of the Bond Validation Order and its binding legal effect, Mr. Kirbo took the position on behalf of the County that the County's execution of the Project Agreement and the PILOT Agreement was invalid.

48. Also, despite entry of the Bond Validation Order, on January 30, 2024, the District Attorney filed a Motion for Reconsideration or in the Alternative to Set Aside the Validation Order (the "Motion for Reconsideration") in the Superior Court, a copy of which is attached hereto without exhibits as **Exhibit N**.[4]

49. The Motion for Reconsideration requests the Superior Court set aside the Bond Validation Order suggesting, among other things, the Authority and the City had voted illegally to approve the Project Agreement.

50. On January 31, 2024, the District Attorney filed a Notice of Appeal, attached hereto as **Exhibit O**, appealing the Bond Validation Order to the Georgia Court of Appeals.

51. The Superior Court has prepared the record for the appeal, but the appeal has not yet been docketed by the Georgia Court of Appeals.

52. On February 2, 2024, the Authority held a vote approving a motion to revoke its approval of the Bond Resolution and the Bond Documents and consent to the rescission of the Bond Validation Order. The text of the motion approved by the Authority is attached hereto as **Exhibit P**.

53. That same day, the Authority filed a response to the District Attorney's Motion for Reconsideration denying the factual assertions and the legal conclusions in the motion, but

---

[4] Plaintiff will provide a version of the Motion for Reconsideration with exhibits upon request.

nonetheless joining in the District Attorney's request for relief based on the text of the motion passed by the Authority. The Authority's Response to the District Attorney's Motion for Reconsideration is attached hereto as **Exhibit Q**.

54. The Authority is refusing to fulfill its obligations under the Bond Resolution and the Bond Documents.

55. The Authority has confirmed to the Company's representatives that it will not close the bond transaction pursuant to the terms of the Bond Resolution and Bond Documents (as approved by the Bond Validation Order), without a court ordering its specific performance.

### COUNT I: BREACH OF THE PROJECT AGREEMENT

56. Plaintiff incorporates the allegations in Paragraphs 1 through 55 of this Verified Complaint as if fully stated herein.

57. The Bond Validation Order established the validity of the Project Agreement.

58. Plaintiff and the Authority, along with others, executed the Project Agreement on December 11, 2023.

59. The Authority executed the Project Agreement with the unanimous approval of its board of directors.

60. The Authority executed the Project Agreement under its statutory mandate to promote economic development.

61. The Authority represented in the Project Agreement that it had legal power and authority to enter into the Project Agreement and any ancillary agreements.

62. Plaintiff has satisfied all conditions precedent under the Bond Documents, including all conditions precedent under the Project Agreement, to allow it to close on the bond transaction.

63. The Authority has refused to allow Plaintiff to close on the bond transaction, including execution of the Rental Agreement.

64. The Authority has refused to issue a taxable revenue bond.

65. The Authority has refused to deliver and execute any of the remaining Bond Documents.

66. The Authority's purported revocation of the Bond Resolution and the Bond Documents was ineffective as a matter of law.

67. The Authority cannot "revoke" its entry into a contract.

68. The Authority's refusal to allow Plaintiff to close on the bond transaction is a material breach of the Project Agreement.

69. The Authority's refusal to close will, if uncorrected, result in the failure of the Project and the loss of hundreds of jobs and hundreds of millions of dollars in economic investment for the City and the County.

70. The Project, given its location and the advantages of Georgia's bond laws and tax incentives, cannot be replicated elsewhere.

71. The Authority's refusal to close will, if uncorrected, cause irreparable harm to Plaintiff that cannot be remedied with money damages.

72. The Authority and Plaintiff acknowledged the unique nature of the Project in the Project Agreement.

73. Section 12.11 of the Project Agreement provides that Plaintiff and the Public Authorities, including the Authority, acknowledge and agree Plaintiff would be damaged irreparably if "any of the provisions of [the Project Agreement] are not materially performed by

the Public Authorities in accordance with their specific terms or otherwise are materially breached."

74. Accordingly, the Public Authorities expressly and specifically agreed Plaintiff would be entitled to injunctive relief compelling specific performance of the terms and provisions of the Project Agreement.

75. Because Plaintiff will suffer irreparable harm as a result of the Authority's refusal to close on the bond transaction as required by the Project Agreement and the other Bond Documents, Plaintiff is entitled to specific performance of the Project Agreement.

76. As this is an action for breach of a valid contract the Authority was authorized to make, sovereign immunity is not a bar to this claim.

## COUNT II: BREACH OF PILOT AGREEMENT

77. Plaintiff incorporates the allegations in Paragraphs 1 through 55 of this Verified Complaint as if fully stated herein.

78. The Bond Validation Order established the validity of the PILOT Agreement.

79. Plaintiff and the Authority, along with the other Public Authorities, executed the PILOT Agreement on December 11, 2023.

80. The Authority executed the PILOT Agreement with the unanimous approval of its board.

81. The Authority executed the PILOT Agreement under its statutory mandate to promote economic development.

82. The Authority represented in the PILOT Agreement that it had legal power and authority to enter into the PILOT Agreement.

83. The PILOT Agreement requires the Authority and Plaintiff to enter into the Rental Agreement upon Plaintiff's closing on the PSA.

84. The Authority has refused to allow Plaintiff to close on the PSA.

85. The Authority has sought to revoke its entry into the PILOT Agreement.

86. The Authority's purported revocation of the Bond Resolution and the Bond Documents was ineffective as a matter of law.

87. The Authority cannot "revoke" its entry into a contract.

88. Plaintiff has satisfied all conditions precedent under the PILOT Agreement, except for closing on the bond transaction, a condition the Authority has wrongfully prevented Plaintiff from accomplishing.

89. The Authority's refusal to allow Plaintiff to close on the bond transaction necessarily means the Authority is refusing to enter into the Rental Agreement.

90. Accordingly, the Authority has breached the PILOT Agreement.

91. The Authority's refusal to close the bond transaction, including entering into the Rental Agreement will, if uncorrected, result in the failure of the Project and the loss of hundreds of millions of dollars in economic investment for the City and the County.

92. Furthermore, the Authority's refusal to close and enter into the Rental Agreement will, if uncorrected, cause irreparable harm to Plaintiff that cannot be remedied with money damages.

93. The Project, given its location and the advantages of Georgia's bond laws and tax incentives, cannot be replicated elsewhere.

94. Because Plaintiff will suffer irreparable harm as a result of the Authority's refusal to close on the PSA and enter into the Rental Agreement, Plaintiff is entitled to specific performance of the PILOT Agreement.

95. As this is an action for breach of a valid contract the Authority was authorized to make, sovereign immunity is not a bar to this claim.

### COUNT III: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

96. Plaintiff incorporates the allegations in Paragraphs 1 through 55 of this Verified Complaint as if fully stated herein.

97. Every contract in Georgia contains an implied covenant of good faith and fair dealing.

98. The Authority's attempt to revoke its commitments under the Bond Resolution and the Bond Documents exhibits bad faith, violating the covenant.

99. Because Plaintiff will suffer irreparable harm as a result of the Authority's bad faith conduct under the PILOT Agreement and the Project Agreement, Plaintiff is entitled to specific performance of those agreements.

100. As this is an action for breach of a valid contract the Authority was authorized to make, sovereign immunity is not a bar to this claim.

### COUNT IV: EXPENSES OF LITIGATION

101. Plaintiff incorporates the allegations in Paragraphs 1 through 100 of this Verified Complaint as if fully stated herein.

102. The Authority's breach of the Project Agreement and PILOT Agreement evidences bad faith, is stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense.

103. Plaintiff is entitled to recover its expenses of litigation related to bringing this suit under O.C.G.A. § 13-6-11.

104. Plaintiff may recover its expenses of litigation even in the absence of recovery of compensatory damages.

105. As this claim is derivative of Plaintiff's claims for breach of contract, the defense of sovereign immunity does not apply to this claim.

## PRAYER FOR RELIEF

WHEREFORE, in accordance with the foregoing, Plaintiff respectfully prays the Court issue the following relief:

1. That a permanent injunction be entered requiring the Authority to perform specifically its obligations under the Project Agreement;

2. That a permanent injunction be entered requiring the Authority to perform specifically its obligations under the PILOT Agreement;

3. In the alternative, that Plaintiff be awarded compensatory damages as a result of the Authority's breaches of contract;

4. That Plaintiff be awarded its expenses of litigation; and

5. Any such further relief the Court deems just and proper.

Respectfully submitted this 13th day of February, 2024.

    WATSON SPENCE LLP
    *Attorneys for Plaintiff*

    */s/ Alfreda L. Sheppard*
    Alfreda L. Sheppard
    Georgia Bar No: 525106
    F. Faison Middleton, IV
    Georgia Bar No: 504745
    Post Office Box 2008
    Albany, Georgia 31702-2008
    (229) 436-1545 Telephone
    (229) 436-6358 Facsimile
    asheppard@watsonspence.com
    fmiddleton@watsonspence.com

BALCH & BINGHAM LLP
*Attorneys for Plaintiff*

T. Joshua R. Archer
Georgia Bar No: 021208
Walter E. Jones
Georgia Bar No: 163287
Hugh Peterson
Georgia Bar No: 574212
Patrick Silloway
Georgia Bar No: 971966
Jordan Walker
Georgia Bar No: 861627
30 Ivan Allen Jr. Boulevard, NW, Suite 700
Atlanta, Georgia 30308
(404) 261-6020 Telephone
(404) 261-3656 Facsimile
jarcher@balch.com
wjones@balch.com
hpeterson@balch.com
psilloway@balch.com
jwalker@balch.com

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
### ALBANY DIVISION

| | |
|---|---|
| SAFER HUMAN MEDICINE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action File No. |
| DECATUR COUNTY-BAINBRIDGE ) | |
| INDUSTRIAL DEVELOPMENT ) | |
| AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing Verified Complaint of Safer Human Medicine, Inc. is true and correct.

Executed on __13 - FEB - 2024__.

_____
James F. Harkness, Jr.
Chief Executive Officer
Safer Human Medicine, Inc.

1