# EXHIBIT A

**BOND RESOLUTION**

Adopted By

## DECATUR COUNTY-BAINBRIDGE INDUSTRIAL DEVELOPMENT AUTHORITY

Relating to the issuance of the

**TAXABLE REVENUE BOND
(PROJECT LIBERTY)
SERIES 2023**

Adopted: December 11, 2023

## TABLE OF CONTENTS

**PAGE**

ARTICLE I ........................................................................................................................................ 1

DEFINITIONS AND INTERPRETIVE MATTERS ......................................................................... 1

    SECTION 1.01 Definitions ............................................................................................................ 1

    SECTION 1.02 Construction of Certain Terms ............................................................................ 4

    SECTION 1.03 Table of Contents; Titles and Headings............................................................... 4

    SECTION 1.04 Recitals ................................................................................................................. 4

ARTICLE II ...................................................................................................................................... 4

THE BONDS .................................................................................................................................... 4

    SECTION 2.01 Authorized Amount of Bonds; Issuance in Series ............................................... 4

    SECTION 2.02 Terms of Bonds..................................................................................................... 5

    SECTION 2.03 Execution; Limited Obligation ........................................................................... 5

    SECTION 2.04 Transfer Restrictions............................................................................................. 6

    SECTION 2.05 Form of Bonds ..................................................................................................... 6

    SECTION 2.06 Validation ............................................................................................................. 6

    SECTION 2.07 Mutilated, Lost, Stolen or Destroyed Bonds....................................................... 6

    SECTION 2.08 Transfer of Bonds; Person Treated as Owner ...................................................... 7

    SECTION 2.09 Cancellation of Bonds.......................................................................................... 7

    SECTION 2.10 Redemption of Bonds; Partial Redemption of Bonds.......................................... 7

    SECTION 2.11 Notice of Redemption........................................................................................... 8

    SECTION 2.12 Call for Optional Redemption.............................................................................. 8

    SECTION 2.13 Effect of Notice of Redemption............................................................................ 9

ARTICLE III..................................................................................................................................... 9

SECURITY ....................................................................................................................................... 9

    SECTION 3.01 Security ................................................................................................................. 9

    SECTION 3.02 Payment of Bonds and Performance of Covenants............................................... 9

    SECTION 3.03 Issuer Representations .......................................................................................... 9

    SECTION 3.04 No Litigation........................................................................................................ 10

    SECTION 3.05 Further Assurances .............................................................................................. 10

    SECTION 3.06 No Other Encumbrance ....................................................................................... 10

    SECTION 3.07 No Personal Liability ........................................................................................... 10

ARTICLE IV .................................................................................................................................... 10

FUNDS ............................................................................................................................................. 10

    SECTION 4.01 Establishment and Use of Bond Fund.................................................................. 10

    SECTION 4.02 Establishment and Use of Project Fund ............................................................... 11

    SECTION 4.03 Home Office Payment ......................................................................................... 12

    SECTION 4.04 Investments .......................................................................................................... 12

ARTICLE V....................................................................................................................................... 12

DISCHARGE OF LIEN ...................................................................................................................... 12

    SECTION 5.01 Discharge of Lien........................................................................................... 12

ARTICLE VI ...................................................................................................................................... 12

DEFAULT PROVISIONS AND REMEDIES ...................................................................................... 12

    SECTION 6.01 Events of Default. .......................................................................................... 12

    SECTION 6.02 Acceleration.................................................................................................... 13

    SECTION 6.03 Other Remedies; Rights of Issuer and Holder ............................................... 13

    SECTION 6.04 Discontinuance of Default Proceedings.......................................................... 13

    SECTION 6.05 Waiver............................................................................................................. 13

    SECTION 6.06 Application of Monies .................................................................................... 13

ARTICLE VII ..................................................................................................................................... 13

THE PAYING AGENT; THE CUSTODIAN ...................................................................................... 13

    SECTION 7.01 Appointment of Paying Agent and Custodian ............................................... 14

    SECTION 7.02 Resignation; Successor Paying Agent ........................................................... 14

    SECTION 7.03 Removal of Paying Agent.............................................................................. 14

    SECTION 7.04 Paying Agency and Custodial Agreements.................................................... 14

ARTICLE VIII.................................................................................................................................... 14

AMENDMENTS, SUPPLEMENTAL BOND RESOLUTIONS.............................................................. 14

    SECTION 8.01 Supplemental Bond Resolutions.................................................................... 14

    SECTION 8.02 Amendments to the Bond Documents. .......................................................... 14

    SECTION 8.03 Effect of Amendments ................................................................................... 14

ARTICLE IX ...................................................................................................................................... 145

FINDINGS AND AUTHORITIZATIONS...........................................................................................
145

    SECTION 9.01 Additional Findings ....................................................................................... 14

    SECTION 9.02 Authorization of Bond Documents ................................................................ 15

    SECTION 9.03 Authorization of Validation. .......................................................................... 16

    SECTION 9.04 General Authorization.................................................................................... 16

    SECTION 9.05 Ratification .................................................................................................... 16

    SECTION 9.06 Repealer. ........................................................................................................ 16

ARTICLE X........................................................................................................................................ 16

MISCELLANEOUS ............................................................................................................................ 16

    SECTION 10.01 Limitation of Rights..................................................................................... 16

    SECTION 10.02 Severability .................................................................................................. 16

    SECTION 10.03 Notices ......................................................................................................... 17

    SECTION 10.04 Payments Due on Non-Business Days......................................................... 17

    SECTION 10.05 Binding Effect.............................................................................................. 17

    SECTION 10.06 Captions; Section References ...................................................................... 18

    SECTION 10.07 Governing Law ............................................................................................ 18

SECTION 10.08 Limited Liability of Issuer ........................................................................... 18

SECTION 10.09 Bond Resolution Constitutes a Contract ...................................................... 18

EXHIBIT A     FORM OF BOND
EXHIBIT B     FORM OF INVESTMENT LETTER
EXHIBIT C     RENTAL AGREEMENT
EXHIBIT D     BOND PURCHASE AGREEMENT
EXHIBIT E     OPTION AGREEMENT
EXHIBIT F     SECURITY DEED
EXHIBIT G     PROJECT AGREEMENT
EXHIBIT H     PILOT AGREEMENT

## BOND RESOLUTION

This BOND RESOLUTION is adopted on December 11, 2023, by the DECATUR COUNTY-BAINBRIDGE INDUSTRIAL DEVELOPMENT AUTHORITY ("Issuer"), a public body corporate and politic established under the laws of the State of Georgia ("State").

WHEREAS, the Issuer is a public body corporate and politic, and public instrumentality of the State, and a development authority duly created under and by virtue of the Constitution and laws of the State, including specifically, but without limitation, that certain amendment to the Constitution of the State, 1968 Ga. Laws 1780, as amended by 1981 Ga. Laws 3482 and as continued by 1985 Ga. Laws 3930 (collectively, "Act"), and, if and to the extent applicable, the Development Authorities Law of the State (O.C.G.A. § 36-62-1 et seq.), as amended (collectively, "Act"), and has the power to issue its revenue bonds for the purpose of paying all or any part of the costs of certain projects in order to promote trade, commerce, industry, and employment opportunities for the public good and the general welfare and to promote the general welfare of the State.

WHEREAS, the Issuer has agreed to issue its Taxable Revenue Bonds (Project Liberty), in one or more series, under such provisions, in aggregate principal amount of up to $300,000,000 in one or more series ("Bonds"), and to apply the proceeds of the sale of the Bonds (whether derived directly or indirectly from the issuance of the Bonds) to finance, directly or indirectly, in whole or in part, the acquisition, construction, installation and modification of a group of animal husbandry facilities and other related facilities and other building(s) and improvements totaling approximately 1.75 million square feet as may be appropriate on the Land located in the Decatur County, Georgia, and an economic development project under O.C.G.A. § 36-62-2(6)(N) and 36-80-25, as more fully described in the Rental Agreement referred to below ("Project") to promote economic development and job creation and to facilitate a property tax incentive for the Company (defined in this Resolution);

WHEREAS, upon issuance of the Bonds, the Issuer and the Company, Safer Human Medicine, Inc., a Delaware corporation, its successors and assigns ("Company"), will enter into a Rental Agreement, dated as of January 1, 2024, or such other date agreed to by the Issuer and the Company, as amended or supplemented from time to time ("Rental Agreement"), pursuant to which the Issuer will rent the Project, including the Project Site, to the Company, and the Company will make Rental Payments sufficient to pay the principal of and interest on the Bonds as the same become due and payable;

WHEREAS, the Issuer will assign and pledge the Rental Agreement and other security described herein for the payment of the Bonds; and

WHEREAS, all things necessary to make the Bonds, when authenticated, issued and delivered as provided in this Bond Resolution, the legal, valid, binding and enforceable special limited obligation of the Issuer, according to the import thereof, and to create a valid assignment and pledge for the payment of the Bonds have been done and performed, and the execution and delivery of this Bond Resolution and the execution, issuance and delivery of the Bonds, subject to the terms hereof, have in all respects been authorized by all necessary action of the Issuer;

NOW, THEREFORE, be it resolved as follows, which resolution shall constitute a contract with the Holder (as defined in this Bond Resolution) of the Bonds, entered into in consideration of its purchase of the Bonds:

## ARTICLE I
### DEFINITIONS AND INTERPRETIVE MATTERS

**SECTION 1.01 Definitions**. In addition to terms elsewhere defined in this Bond Resolution and the Rental Agreement, the following words and terms as used in this Bond Resolution and the preambles hereto shall have the following meanings unless the context or use clearly indicates another or different meaning

or intent and such definitions shall be equally applicable to both the singular and plural forms of the terms and words herein defined:

"Act" has the meaning set forth in the recitals to this Bond Resolution.

"Additional Bonds" means any revenue bonds of the Authority ranking on a parity with the Series 2023 Bond, which may hereafter be issued pursuant to section 2.01 of this Bond Resolution.

"Advances" means advances toward the principal amount of each Bond made by the Holder of the Bond in accordance with the Bond Purchase Agreement.

"Basic Rent" has the meaning set forth in the Rental Agreement.

"Bond Documents" means the Rental Agreement, the Bond Purchase Agreement, the Option Agreement, the Security Deed, the Project Agreement, and the PILOT Agreement.

"Bond Fund" means the fund referenced in Section 4.01 of this Bond Resolution.

"Bond Purchase Agreement" means the Bond Purchase Agreement to be dated as of January 1, 2024, or such other date agreed to by the Issuer and the Company, by and between the Issuer and the Company, as purchaser of the Bonds.

"Bond Resolution" means this Bond Resolution, as the same may be amended or supplemented from time to time as permitted hereby.

"Bonds" means collectively the bonds authorized by this Bond Resolution and defined in the recitals to this Bond Resolution.

"Business Day" means any day other than: (i) a Saturday or Sunday; or (ii) any day on which banks located in Atlanta, Georgia are required or authorized to be closed for business.

"Company" has the meaning set forth in the recitals to this Bond Resolution.

"Costs of the Project" has the meaning set forth in the Rental Agreement.

"Custodian" means the custodian of the Project Fund designated by the Issuer, and any successor custodian.

"Event of Default" means any of the events specified in Section 6.01 herein.

"Holder" means the Person who shall be the registered owner of the Bonds or if the Bonds are held by more than one Person, the registered owner or each of the Bonds.

"Interest Payment Date" means each February 1, commencing February 1, 2024, and continuing through the final maturity of the Bonds.

"Issue Date" means the date on which the Bonds are delivered to the purchaser thereof upon original issuance.

"Issuer" means the DECATUR COUNTY-BAINBRIDGE INDUSTRIAL DEVELOPMENT AUTHORITY, a public body corporate and politic established under the laws of the State, or any successor.

"Option Agreement" means the Option Agreement, to be dated as of January 1, 2024, or such other date agreed to by the Issuer and the Company, by and between the Issuer and the Company.

2

"Paying Agent" means any party designated by the Issuer, or any successor Paying Agent appointed under this Bond Resolution or, if none, the Issuer.

"Person" means any natural person, firm, partnership, association, corporation, limited liability company or public body.

"PILOT Agreement" means that certain PILOT Agreement, to be dated the date of its execution, by and among the Issuer, the Company, and the Decatur County Board of Tax Assessors.

"Principal Balance" means, as to any particular Bond, as of any particular time, (i) the total amount which has been the subject of any Advances under the Bond Purchase Agreement for such Bond, reduced by (ii) any principal amounts which have theretofore been paid on that Bond.

"Project" has the meaning set forth in the recitals.

"Project Agreement" means the Project Agreement, to be dated the date of its execution, by and among the Issuer, the Company, and various other governmental entities, acting by and through their respective authorized officials.

"Project Fund" means the fund referenced in Section 4.02 of this Bond Resolution.

"Record Date" means the close of business on the 15th day of the calendar month preceding each Interest Payment Date, regardless of whether such day is a Business Day.

"Register" means the register for indicating the record owner of Bonds, maintained by the Paying Agent.

"Registrar" means, as to any Bond, the Issuer, as registrar for such Bond, or any successor Registrar.

"Rental Agreement" has the meaning set forth in the recitals to this Bond Resolution.

"Requisition" has the meaning set forth in the Rental Agreement.

"Reserved Rights" means the rights of the Issuer (i) to receive payments and reimbursements under Section 5.3 of the Rental Agreement, other than Basic Rent, which has been assigned to the Holder of the Bonds, (ii) under Sections 6.3, 6.4, 6.5, 6.6, 8.2, 8.5, 10.4 and 11.1 of the Rental Agreement, (iii) to receive any notices, reports and other statements be given to the Issuer pursuant to any provision of the Rental Agreement, (iv) to provide any required consents, (v) to enforce all of its Reserved Rights, including without limitation as provided under Section 11.11 of the Rental Agreement, and (vi) with respect to Grant-Funded Assets. Without limitation, such term expressly includes all rights designated as such herein and in the Rental Agreement and all rights intended to be solely for the benefit of the Issuer, including, but not limited to, those provided in Section 11.11 of the Rental Agreement.

"Security" has the meaning set for in this Bond Resolution.

"Security Deed" means that certain Deed to Secure Debt and Security Agreement, to be dated as of January 1, 2024, or such other date agreed to by the Issuer and the Company, by the Issuer in favor of the Company, as purchaser of the Bonds.

"Series 2023 Bond" has the meaning set forth in Section 2.01(a) of this Bond Resolution.

"State" has the meaning set forth in the recitals to this Bond Resolution.

**SECTION 1.02 Construction of Certain Terms**. For all purposes of this Bond Resolution, except as otherwise expressly provided herein or unless the context otherwise requires, the following rules of construction shall apply:

(a)    The use of the masculine, feminine, or neuter gender is for convenience only and shall be deemed and construed to include correlative words of the masculine, feminine, or neuter gender, as appropriate.

(b)    All references in this instrument to designated "Articles," "Sections," and other subdivisions are to the designated Articles, Sections, and other subdivisions of this Bond Resolution unless the context clearly indicates a reference to some other instrument or to a particular law or regulation. The words "herein," "hereof," and "hereunder" and other words of similar import refer to this Bond Resolution as a whole and not to any particular Article, Section, or other subdivision.

(c)    The terms defined in this Article shall have the meanings assigned to them in this Article and include the plural as well as the singular.

(d)    All accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles as promulgated by the American Institute of Certified Public Accountants, on and as of the date of this instrument.

**SECTION 1.03 Table of Contents; Titles and Headings**. The table of contents, the titles of the articles, and the headings of the sections of this Bond Resolution are solely for convenience of reference, are not a part of this Bond Resolution, and shall not be deemed to affect the meaning, construction, or effect of any of its provisions.

**SECTION 1.04 Recitals**. The recitals above are part of this Bond Resolution and are hereby incorporated herein by reference.

## ARTICLE II
## THE BONDS

**SECTION 2.01    Authorized Amount of Bonds; Issuance in Series**.

(a) For the purposes herein stated, the issuance and delivery of the Bonds by the Issuer are hereby authorized as follows: The issuance of a Bond designated "DECATUR COUNTY-BAINBRIDGE INDUSTRIAL DEVELOPMENT AUTHORITY Taxable Revenue Bond (Project Liberty), Series 2023 ("Series 2023 Bond") in the principal face amount of $3000,000,000 in one or more series, is hereby authorized. The Additional Bonds shall be issued only upon satisfaction of certain conditions to issuance, as set forth herein below. Notwithstanding the foregoing, the aggregate maximum principal amount of all Bonds issued hereunder shall not exceed $300,000,000. Each of the Bonds shall be designated as provided in this Section, with such rights of exchangeability and transfer of registration, and shall be in the form and executed and attested in the manner provided herein. Each of the Bonds shall be issued to the Company, as purchaser, as provided in the Bond Purchase Agreement, and Advances on each Bond may be made pursuant to the Bond Purchase Agreement to pay costs of, directly or indirectly, acquiring, constructing, and equipping, in whole or in part, the Project to promote economic development and job creation and to facilitate a property tax incentive for the Company.

(b) The Additional Bonds may be issued in sequential order and, in the case of the issuance of an Additional Bond on or before January 1, 202[], only upon satisfaction of each of the following conditions: (i) the Issuer has received a written request from the Company to issue the applicable Additional Bond stating the maximum principal amount of such Additional Bond to be issued (the principal face amount to be at least $[],000,000, and provided that the maximum aggregate principal amount of all Bonds may not exceed $300,000,000), (ii) the Company is not then in default with respect to its obligations under the

4

Rental Agreement or the Project Agreement, (iii) construction on the Company's initial main vehicle production facility has commenced and is being actively pursued (or is completed), (iv) the Company acknowledges in writing the increase of its Section 2.1 Investment and Employment Commitments of the Company set forth in Section 2.1 of the Project Agreement in an amount equal to the principal amount of such Additional Bond (so that the Section 2.1 Investment and Employment Commitments of the Company will at all times be equal to the maximum principal amount of all Bonds issued for the Project), (v) the Company acknowledges in writing the adjustment to the PILOT Payments (as defined in the Rental Agreement) to be made with respect to the Project, as described in the Rental Agreement and the Project Agreement, (vi) any other conditions set forth in the Bond Documents have been met in all material respects, (vii) the Company pays all fees, costs and expenses of the issuance of such Additional Bond, as described in the Project Agreement, and (viii) the Company shall have delivered an investment letter substantially in the form attached to this Bond Resolution as Exhibit B. Within 30 days of the satisfaction of each condition, or written waiver thereof by the Issuer and the holder of all other Bonds then Outstanding, the Issuer will cause such Additional Bond to be issued.

**SECTION 2.02    Terms of Bonds.**

(a)      Bonds. Each of the Bonds authorized and issued hereunder shall constitute a "revenue bond" under the Act. Each of the Bonds shall be issued in fully registered form without coupons. Each of the Bonds shall be dated its respective Issue Date and shall bear interest computed on the basis of a 360-day year composed of twelve 30-day months. The outstanding principal amount of each Bond shall bear interest at the rate of 6.0% per annum. Each Bond shall be issued as a single amortizing bond maturing no later than January 1, 2057. Principal of each Bond shall be payable in full on January 1, 2057, and any other date on which principal is scheduled to be paid, as reflected in such Bond. The principal face amount of each Bond shall be the maximum amount available to be drawn thereon at issuance, but the principal amount outstanding from time to time thereunder shall be the sum of Advances made thereunder and under the terms of the Bond Purchase Agreement, less principal paid pursuant to Section 2.09 hereof.

(b)      Payment of Bonds. Each Bond shall bear interest as provided herein from its Issue Date to and including the date of payment in full. Interest accrued shall be paid on each Interest Payment Date. The principal of and the interest on the Bonds shall be payable in lawful currency of the United States. The principal of and interest on the Bonds will be paid by check or draft to the person in whose name such Bonds are registered on the Register at the close of business on the Record Date immediately preceding each Interest Payment Date; provided, that the Holder of any Bonds may, by prior written instructions filed with the Registrar and the Company (which instructions shall remain in effect until revoked by subsequent written instructions), direct that principal and interest payments be made by wire transfer to an account in the continental United States or by other means acceptable to the Registrar and the Company or by intrabank transfer to another account in the same institution.

**SECTION 2.03 Execution; Limited Obligation**. The Bonds shall be executed on behalf of the Issuer by the manual or facsimile signature of the Chairman or Vice Chairman of the Issuer and countersigned by the manual or facsimile signature of the Secretary or Treasurer of the Issuer and shall have impressed or imprinted thereon the corporate seal of the Issuer.

THE BONDS AND INTEREST THEREON SHALL NOT BE DEEMED TO CONSTITUTE A DEBT OR LIABILITY OF THE STATE, OR ANY POLITICAL SUBDIVISION THEREOF, AND ITS ISSUANCE SHALL NOT, DIRECTLY, OR INDIRECTLY OR CONTINGENTLY, OBLIGATE THE ISSUER, THE STATE OR ANY POLITICAL SUBDIVISION THEREOF, INCLUDING WITHOUT LIMITATION THE CITY OF BAINBRIDGE, DECATUR COUNTY, TO LEVY ANY FORM OF TAXATION THEREFOR OR MAKE ANY APPROPRIATION FOR THEIR PAYMENT. NOTHING IN THE BONDS OR IN THE BOND RESOLUTION OR THE PROCEEDINGS OF THE ISSUER AUTHORIZING THE ISSUANCE OF THE BONDS OR IN THE ACT SHALL BE CONSTRUED AS CREATING A DEBT OF THE STATE, OR ANY POLITICAL SUBDIVISION THEREOF, INCLUDING WITHOUT LIMITATION THE CITY OF BAINBRIDGE, DECATUR COUNTY, WITHIN THE

MEANING OF ANY CONSTITUTIONAL OR STATUTORY PROVISION OF THE STATE. NO MEMBER, DIRECTOR OR OFFICER, AGENT, OR EMPLOYEE OF THE ISSUER, INCLUDING ANY PERSON EXECUTING THIS BOND RESOLUTION OR THE BONDS, SHALL BE LIABLE PERSONALLY ON THE BONDS OR SUBJECT TO ANY PERSONAL LIABILITY FOR ANY REASON RELATING TO THE ISSUANCE OF THE BONDS. THE BONDS AND INTEREST DUE THEREON SHALL NOT BE A GENERAL OBLIGATION, DEBT OR A LIABILITY OF THE ISSUER AND DOES NOT CONSTITUTE OR GIVE RISE TO ANY PECUNIARY LIABILITY OR CHARGE AGAINST THE GENERAL CREDIT OF THE ISSUER BUT SHALL BE A LIMITED OBLIGATION OF THE ISSUER PAYABLE SOLELY FROM AND SECURED BY THE SECURITY, ALL AS DESCRIBED IN AND SUBJECT TO LIMITATIONS SET FORTH IN THIS BOND RESOLUTION. THE ISSUER HAS NO TAXING POWER.

**SECTION 2.04 Transfer Restrictions**. Neither the Bonds nor the obligations of the Company embedded in such Bonds have been, and are not expected to be, registered under the federal Securities Act of 1933, as amended, or under the securities laws of any state and this Bond Resolution has not been, and is not expected to be, qualified under the federal Trust Indenture Act of 1939, as amended. The Bonds shall only be issued and transferred to Persons executing and delivering to the Issuer an investment letter in substantially the form attached to this Bond Resolution as Exhibit B. Each Bond is to be issued in a private placement, and each such Bond may be transferred in whole, but not in part, only in a single transaction to a transferee that is a permitted assignee of Company under the Rental Agreement and that is also the tenant of the Project. A Bond may not be apportioned into multiple instruments and may not be exchanged for bonds of a denomination smaller than the unpaid Principal Balance of such Bond. In addition, prior to the earlier of (i) the date the maximum principal amount of such Bond has been drawn down by the Issuer under the Bond Purchase Agreement, or (ii) the date the right to draw down any additional amounts under such Bond Purchase Agreement has expired, or the date on which the Company (or an assignee of the Rental Agreement) waives in writing, filed with the Issuer, its right to make further draws under such Bond Purchase Agreement, such Bond may not be transferred, unless the transferee has agreed in writing to assume the Company's obligations as purchaser under the Bond Purchase Agreement, so that the transferee shall be obligated to make Advances under the Bond Purchase Agreement pursuant to draw requests executed by such Company (or an assignee of the Rental Agreement) on behalf of the Issuer; in such case, the transferee shall thereafter be deemed to be "Purchaser" under the Bond Purchase Agreement.

**SECTION 2.05 Form of Bonds**. The Bonds shall be in substantially the form attached to this Bond Resolution as Exhibit A, with such appropriate variations, omissions, substitutions and insertions as are permitted or required hereby or are required by law; and such Bonds may have such letters, numbers or other marks of identification and such legends and endorsements placed thereon as may be required to comply with any applicable laws or rules or regulations, or as may, consistent herewith, be determined by the officers of the Issuer executing such Bonds, as evidenced by their execution of the Bonds.

**SECTION 2.06 Validation**. After the Bonds shall have been validated, this provision shall be deemed a continuing direction by the Issuer to the Clerk of the Superior Court of Decatur County to execute validation certificates with respect to the Bonds, including any Bonds issued in replacement for a Bond originally issued.

**SECTION 2.07 Mutilated, Lost, Stolen or Destroyed Bonds**. If a Bond is mutilated, lost, stolen or destroyed, the Issuer may execute and deliver a new Bond of the same tenor in lieu of and in substitution for the Bond mutilated, lost, stolen or destroyed; provided, that there shall be first furnished to the Issuer evidence satisfactory to it of the ownership of such Bond and of such loss, theft or destruction (or, in the case of a mutilated Bond, such mutilated Bond shall first be surrendered to the Issuer), together with indemnity satisfactory to the Issuer which shall protect it against any loss which may arise as a result of any claim for payment that may be made with respect to the Bond which was purported to have been lost, stolen or destroyed, including any legal fees, legal expenses and costs they may incur with respect to any such claim. As a condition of issuing a replacement Bond under this paragraph, the Issuer may make a charge for the replacement of the Bond sufficient to reimburse it for any tax or other governmental charge required

to be paid with respect to such replacement and for reasonable fees and expenses of counsel to the Issuer in confirming that the replacement of the Bond is a permitted replacement hereunder which will be paid by the Company.

### SECTION 2.08    Transfer of Bonds; Person Treated as Owner.

(a)    A Register for the registration of the Bonds and for the registration of transfer of the Bonds as provided herein shall be kept by the Registrar.

(b)    The transfer of a Bond, if such transfer is permitted hereby, shall be registered in the Register upon the surrender and presentation of that Bond at the principal office of the Registrar duly endorsed for transfer or accompanied by an assignment duly executed by the registered owner or the registered owner's attorney duly authorized in writing in such form as shall be satisfactory to such Registrar, together with (i) transfer instructions containing the name and address of the transferee, (ii) the federal E.I.N. of the transferee, (iii) evidence that the transferee is a permitted assignee of the Company under the Rental Agreement that is the tenant of the Project or an assignee of the Rental Agreement, (iv) an investment letter as referred to in Section 2.04 hereof, and (v) opinion of counsel acceptable to the Issuer to the effect that such transfer will not violate applicable securities laws. Thereupon, the Issuer shall execute and deliver in the name of the transferee a replacement Bond of the same tenor.

(c)    Any tax on or service charge made by the Issuer for any such registration or transfer and all reasonable expenses of the Issuer shall be paid by the Holder of the Bonds.

(d)    The person in whose name a Bond shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes, and payment of or on account of either principal or interest shall be made only to or upon the order of the registered owner thereof or his or her duly authorized attorney, but such registration may be changed as hereinabove provided. All such payments shall be valid and effectual to satisfy and discharge the liability upon the Bond to the extent of the sum or sums so paid.

(e)    Any Bond issued in replacement upon any transfer of a Bond shall be the legal, valid, and binding limited obligation of the Issuer, evidencing the same debt, and entitled to the same security and benefits under this Bond Resolution.

**SECTION 2.09 Cancellation of Bonds**. Any Bond certificate surrendered in any registration of transfer or exchange and any mutilated Bond surrendered to the Registrar for replacement shall be forthwith marked "canceled" and such cancellation and the identity of the Bond issued in such transaction shall be entered in the Register by the Registrar. If the entire principal balance of that Bond is to be paid at maturity or by redemption, then such Bond must be promptly surrendered to the Registrar, shall be forthwith marked "canceled and paid" by the Registrar and a record showing the payment in full and cancellation thereof shall be entered in the Register by the Registrar. The Registrar shall deliver all such canceled Bonds to the Issuer.

**SECTION 2.10 Redemption of Bonds; Partial Redemption of Bonds**. The Bonds are subject to optional redemption by the Issuer prior to maturity, in whole or in part on any date, at a redemption price equal to 100% of the principal amount being redeemed plus accrued interest on such Bond or portion thereof being redeemed to the redemption date, but only upon the written direction of the Company as provided in Section 2.11 hereof. If a Bond is to be redeemed only in part, the redemption price shall be paid without the requirement that such Bond be surrendered arid such prepayments shall be noted by the Holder on the Schedule of Advances and Redemptions attached to that Bond. If the entire Principal Balance of a Bond is to be paid, then the Bond must be marked "canceled and paid" by the Holder and promptly surrendered to the Registrar.

**SECTION 2.11 Notice of Redemption.** Except as otherwise provided in this Section or unless waived by the registered owner of a Bond, official notice of redemption of that Bond shall be given by the Registrar, on behalf of the Issuer, by mailing a copy of an official redemption notice by first class mail, postage prepaid, at least 30 days and not more than 60 days prior to the date fixed for redemption to the Person who was the registered owner of the Bond to be redeemed as of the close of business of the Registrar on the Business Day immediately preceding the mailing of such notice, at the address shown on the Register or at such other address as is furnished in writing by such registered owner to the Registrar. Notwithstanding the foregoing, if the registered holder of that Bond is the Company or an Affiliate of the Company, notice of redemption shall be deemed to be waived.

All official notices of redemption shall be dated, shall contain the complete official name of the Bond to be redeemed, including Series designation and Bond number thereof, and shall state:

(a)     the redemption date;

(b)     if less than the entire principal amount of a Bond is to be redeemed, the portion of the principal amount of that Bond (stated in dollars) that is to be redeemed and included in the redemption price, the amount of accrued interest (if any) to be paid as a part of the redemption price and the total amount of the redemption price;

(c)     that, on the redemption date, the redemption price will become due and payable upon that Bond or portion thereof called for redemption and that interest on such Bond or such portion shall cease to accrue from and after such date; and

(d)     if the entire principal amount of any Bond is to be redeemed, the address where that Bond is to be presented for payment of the redemption price (which place of payment shall be the office of the Paying Agent) and the name, address, and telephone number of a person or persons at the office of the Paying Agent who may be contacted with respect to the redemption.

Official notice of redemption having been given as described above, or if notice is waived by the Holder of a Bond or deemed to be waived, that Bond or portions of such Bond so to be redeemed shall, on the redemption date, become due and payable, and interest shall cease to accrue. The failure of the Holder of such Bond to receive any redemption notice given as herein provided shall not affect the validity of any proceeding for the redemption of that Bond. The Issuer shall have no responsibility whatsoever if any such notice is given as aforesaid but is not received by or receipt thereof is refused by the registered owner thereof. No defect in any such notice shall in any manner defeat the effectiveness of a call for redemption.

If any Bond is to be redeemed only in part, the redemption price shall be paid in the same manner as scheduled payments of interest, without the requirement that the Bond be surrendered.

If the entire Principal Balance of any Bond is to be paid, then that Bond must be surrendered to the Paying Agent for payment. In the latter situation, if, by the 60th day following the redemption date, the registered owner has failed to present such Bond for redemption, the Registrar shall mail a second notice of redemption not more than 90 days following the redemption date to the registered owner of the Bond that was not presented for payment upon redemption within 60 days following the redemption date, which notice shall be mailed by registered or certified mail, with a return receipt requested. If such Bond is not surrendered, the Paying Agent shall hold amounts payable on redemption of that Bond which has not been presented for redemption for the benefit of the registered owner, but without liability for interest on such unclaimed funds.

**SECTION 2.12 Call for Optional Redemption**. If the Company elects to cause a Bond to be redeemed by optional redemption, in whole or in part, the Company, as agent for the Issuer, shall direct the Registrar in writing to give notice of such redemption. Such notice shall specify the Bond to be redeemed, the redemption date, and the amount of the Principal Balance of the Bond that is to be redeemed. Such direction

shall be given at least 5 Business Days prior to the date on which notice of redemption is to be given in accordance with Section 2.10 hereof. Consideration for the optional redemption of that Bond shall be provided by the Company (in cash, or by cancellation of the Bond in whole or by credit against the Principal Balance thereof, in the latter case by an entry on the Schedule of Advances and Redemptions attached to that Bond). Notwithstanding the foregoing, if the registered holder of the Bond is the Company or an Affiliate of the Company, such notice of redemption shall be deemed waived.

**SECTION 2.13 Effect of Notice of Redemption**. Official notice of redemption having been given with respect to a Bond in the manner and under the conditions provided in Section 2.10 hereof, or if the Holder thereof waives notice of redemption or is deemed to have waived such notice, that Bond or portion of the Bond so called for redemption shall, on the redemption date, become and be due and payable at the redemption price provided for redemption of the Bond on such date, and interest on the Bond or portion of the Bond so called for redemption shall cease to accrue, that Bond or portion of such Bond shall cease to be entitled to any lien, benefit, or security under this Bond Resolution, and the registered owner of that Bond or portion of the Bond so called for redemption shall have no rights in respect thereof except to receive payment of the redemption price thereof, if moneys for payment of the redemption price are tendered to the Bondholder on the redemption date by the Paying Agent (or, if the entire Principal Balance of the Bond is to be redeemed, moneys for the payment thereof are held in the Bond Fund on the redemption date and the Holder fails to present the Bond for payment on the redemption date). Upon redemption of the entire outstanding Principal Balance of a Bond, that Bond shall be cancelled and surrendered to the Registrar.

## ARTICLE III
## SECURITY

**SECTION 3.01    Security**.

(a)    As security for payment of the Bonds, the Issuer hereby grants, assigns, and pledges a security interest to Holder in and through the following:

(i) the Basic Rent;
(ii) all monies and investments in the Bond Fund and the Project Fund;
(iii) all of the Issuer's right, title, and interest in the Rental Agreement, except Reserved Rights;
(iv) the Security Deed; and
(v) all of the proceeds of the foregoing, including without limitation, investments thereof.

(b)    The foregoing are collectively "Security" and, in consideration of the purchase of the Bonds and to secure payment of the principal of and interest on the Bonds on a parity basis, and any other cost or pecuniary liability of the Issuer relating to the Bonds or any proceeding, document or certification incidental to the issuance of the Bonds, and to secure performance and observance of all covenants, terms and conditions upon which the Bonds are to be issued, including without limitation this Bond Resolution, the Issuer, without recourse, representation or warranty, pursuant to law hereby conveys, assigns and pledges all of its right, title and interest in and to, the Security to the Holder of the Bonds and its successors and assigns.

**SECTION 3.02 Payment of Bonds and Performance of Covenants**. The Issuer shall promptly pay, but only out of the Security, the principal of and interest on the Bonds at the place, on the dates and in the manner provided in the Bonds. The Issuer shall promptly perform and observe all covenants, undertakings and obligations set forth herein, in the Rental Agreement or the Bonds on its part to be performed or observed. The Issuer shall fully cooperate with the Holder of each Bond in the enforcement of rights granted to the Issuer under the Rental Agreement.

**SECTION 3.03 Issuer Representations**. The Issuer represents and warrants that as of the date of delivery hereof: (i) it is duly authorized under the Constitution and laws of the State to issue the Bonds, and

to execute, deliver and perform the terms of each of the Bond Documents and of this Bond Resolution; (ii) all action on its part for the issuance of the Bonds and execution and delivery of the Bond Documents and this Bond Resolution has been duly taken; (iii) the Bonds, upon issuance, and the Bond Documents and this Bond Resolution upon execution and delivery, and assuming due authentication, execution and delivery by the other parties thereto, shall be valid and enforceable obligations of the Issuer in accordance with their terms, except as enforceability may be limited by general equitable principles; (iv) it has not heretofore conveyed, assigned, pledged, granted a security interest in or otherwise disposed of the Security; (v) without making any independent investigation, it has no knowledge of any right of set-off, defense or counterclaim to payment or performance of the terms or conditions of the Rental Agreement; and (vi) the execution, delivery and performance of the Bond Documents and this Bond Resolution and issuance of the Bonds are not in contravention of law or any agreement, instrument, bond resolution or other undertaking to which it is a party or by which it is bound and no other approval, consent or notice from any governmental agency is required on the part of the Issuer.

**SECTION 3.04 No Litigation.** The Issuer represents and warrants that as of the date hereof, other than proceedings for validation of the Bonds, as required by law, (i) no litigation or administrative action of any nature is now pending, or to the best of its knowledge threatened, to restrain or enjoin the issuance or delivery of the Bonds or the execution and delivery by the Issuer of this Bond Resolution, the Bond Documents or in any manner questioning the proceedings or authority under which the same have been conducted, or affecting the validity of the same; (ii) no contest is pending that is material to the validity or enforceability of the Bonds, this Bond Resolution or the Bond Documents or that contests its existence or boundaries, of the Issuer or its present members, directors, elected officials or officers; and (iii) no authority or proceeding for the issuance of the Bonds or for the payment or security thereof has been repealed, revoked or rescinded.

**SECTION 3.05 Further Assurances**. The Issuer covenants that it will cooperate to the extent necessary with the Holders of the Bonds in its defense of the Security against the claims and demands of all Persons and, upon payment or provision for payment of the fees and expenses to be incurred by the Issuer in connection therewith, will do, execute, acknowledge and deliver or cause to be done, executed, acknowledged and delivered such instruments supplemental hereto and such further acts, instruments and transfers as the Holders of the Bonds may reasonably require for the better pledging of the Security.

**SECTION 3.06 No Other Encumbrance**. The Issuer covenants that, except as otherwise provided herein and in the Rental Agreement, it will not sell, convey, mortgage, encumber or otherwise dispose of any portion of the Security.

**SECTION 3.07 No Personal Liability**. No personal liability whatsoever shall attach to, or be incurred by, any director, member, officer, agent, attorney, or employee, as such, past, present, or future, of the Issuer or of any successor entity, either directly or through the Issuer or any successor entity, under or by reason of any of the obligations, promises or agreements entered into by the Issuer in connection with the Bonds.

### ARTICLE IV
### FUNDS

**SECTION 4.01 Establishment and Use of Bond Fund**. Except as otherwise provided herein, the Paying Agent will establish a bond fund for the payment of debt service on the Bonds. All Basic Rent and all other monies received by the Paying Agent for deposit by it therein shall be deposited into the Bond Fund. In such event, the Paying Agent shall be authorized and directed, and the Paying Agent hereby agrees, to withdraw from the Bond Fund amounts available therein to pay the principal of and interest on the Bonds as the same become due and payable, whether upon any scheduled payment date, call for redemption, acceleration or otherwise. After payment in full of the Bonds, any amounts in the Bond Fund shall be paid to the Company. Notwithstanding the foregoing, should the Company be the Holder of the Bonds and should a home office payment agreement, or another document with home office payment provisions,

entered into in accordance with Section 4.03 hereof be in effect, then the Bond Fund shall not be created and established with the Paying Agent.

**SECTION 4.02 Establishment and Use of Project Fund**. There shall be created and established in the name of the Issuer the Project Fund:

(a)     All cash proceeds from the sale of the Bonds or an advance of the principal amount thereof, if any, shall upon receipt by the Issuer, or by the Custodian, be immediately credited to the Project Fund. Investment income, if any, received from Permitted Investments in the Project Fund shall be deposited upon receipt in the Project Fund. Proceeds of the Bonds and investment income, if any, earned thereon in the Project Fund shall be held in the Project Fund by the Custodian and applied solely to the payment or reimbursement of the Costs of the Project. Amounts advanced on the Bonds in cash, if any, under the Bond Purchase Agreement shall be deposited in the Project Fund and held therein until disbursed by the Custodian to pay Costs of the Project; provided, however, that amounts advanced with respect to the Bonds under the Bond Purchase Agreement may, at the direction of the Company, be disbursed directly to third parties to pay Costs of the Project or paid to the Company to reimburse Costs of the Project previously paid by it.

(b)     Any amounts of cash or Permitted Investments remaining in the Project Fund after the Project has been completed and all Costs of the Project have been paid shall be transferred to the Bond Fund. Following the completion of the Project, the payment of all Costs of the Project and the making of any transfer from the Project Fund to the Bond Fund in accordance with the foregoing provisions of this Section, that Project Fund shall be an inactive fund unless Net Proceeds of casualty insurance, eminent domain award or sale of the Project are required to be deposited in such Project Fund as provided in the Rental Agreement or the Security Deed; provided, however, if the Company rents the Project under the Rental Agreement, and is also the Custodian, and if the Company is also the Holder of the Bonds, then it shall not be necessary to deposit any Net Proceeds in the Project Fund. Net Proceeds deposited in the Project Fund, if any, and any investment income earned thereon, shall be held in such Project Fund until the same are either (i) used to repair, restore or replace the Project, or the portion thereof that was damaged, destroyed, taken or sold, or (ii) transferred to the Bond Fund to be used to retire the Bonds or reduce the Principal Balance of the Bonds.

(c)     All payments from the Project Fund to pay Costs of the Project shall be made by the Custodian upon Requisition of the Company, as provided in the Rental Agreement. All payments from the Project Fund to pay costs of repairing, restoring, or replacing the Project shall be made upon submission of a Requisition of the Company, subject to any requirements of the Security Deed. Notwithstanding the foregoing, if the Company rents the Project under the Rental Agreement and is the Custodian of the Project Fund and if the Company or an Affiliate thereof is also the Holder of the Bonds, and if the Company or an Affiliate thereof has paid Costs of the Project which are to be reimbursed, then it shall not be necessary for cash to be disbursed by the purchaser of the Bonds under the Bond Purchase Agreement to the Custodian for deposit in the Project Fund and then disbursed by the Custodian to the Company or its Affiliate, if the Company directs in the Requisition that such amount be deemed to be constructively drawn and disbursed, in which case the principal of such Bond shall be increased by the amount costs reflected in such Requisition.

The Issuer, the Custodian, the Holders of the Bonds, and the Company may enter into an agreement providing for the making of Advances of the principal amount of the Bonds in a manner other than the manner set forth herein upon such conditions as shall be satisfactory to the Issuer, the Custodian, the Holders of the Bonds, and the Company. The Bond Purchase Agreement to be entered into in connection with the Bonds contains such an agreement among the parties with regard to the making of Advances on the Bonds and the funding of the Costs of the Project.

**SECTION 4.03 Home Office Payment**. Notwithstanding any provision of this Bond Resolution or of the Bonds to the contrary, the Issuer, the Paying Agent and the Company may enter into a home office payment agreement with the Holder of the Bonds, providing for the payment of all principal and interest on such Bonds or any part thereof at a place and in a manner other than as provided in this Bond Resolution and in the Bonds without presentation or surrender of such Bonds, upon such conditions as shall be satisfactory to the Issuer. Any home office payment agreement shall govern payment of principal and interest on the Bonds. Any Paying Agent shall not be liable to any such owner or to the Issuer for any act or omission to act on the part of the Issuer, any such owner or any agent of the Issuer, in connection with any such agreement and the Paying Agent shall have no obligation in connection with any payment of principal or interest made in compliance with any such agreement and shall not be deemed to have notice of any default in the making of any such payment. Upon the transfer of any registered Bonds being paid in accordance with the provisions of a home office payment agreement permitted by this Section, the owner of such registered Bonds, prior to the delivery of such Bonds to the transferee, shall make a notation on such Bonds of the date to which interest has been paid thereon and the amount of any prepayments made on account of the principal thereof and the Paying Agent shall not be deemed to have notice of any such payment. The Bond Purchase Agreement to be entered into in connection with the Bonds contains such a home office payment agreement with regard to the payment of debt service on the Bonds.

**SECTION 4.04 Investments**. Moneys in the Bond Fund may, until needed to pay debt service on the Bonds, be invested in Permitted Investments selected by the Company, which shall be registered in the name of the Paying Agent. Moneys in the Project Fund may, until needed to be disbursed to pay Costs of the Project or to repair, restore or replace the Project, be invested in Permitted Investments selected by the Company, which shall be registered in the name of the Custodian, as Custodian of the Project Fund. Moneys and Permitted Investments in each such Fund shall be accounted for as a separate and special fund apart from all other funds of the Issuer and of the Company and shall not be co-mingled with each other or with other moneys or investments of the Issuer or the Custodian.

**ARTICLE V**
**DISCHARGE OF LIEN**

**SECTION 5.01 Discharge of Lien**. Upon payment in full of all of the Bonds, and if there shall have been paid or provision duly made for the payment of all fees and expenses of the Issuer and the Paying Agent due or to become due, the lien of this Bond Resolution on the Security shall cease, terminate and be void.

**ARTICLE VI**
**DEFAULT PROVISIONS AND REMEDIES**

**SECTION 6.01    Events of Default.** Any one of the following shall constitute an Event of Default hereunder:

(a)    Default in the payment of principal of or interest on any Bond when and as the same shall have become due either at maturity or by proceedings for redemption, and the continuance thereof for a period of 10 days after written notice thereof is given by the Holder to the Issuer and the Company;

(b)    Default in the observance or performance of any other of the covenants, agreements, or conditions on the part of the Issuer included in this Bond Resolution or any Bonds and the continuance thereof for a period of 30 days after written notice to the Issuer and the Company has been given by the Holder;

(c)    The occurrence of an Event of Default under the Rental Agreement or the Security Deed.

An Event of Default with respect to a particular Bond shall constitute an Event of Default with respect

to all Bonds.

**SECTION 6.02 Acceleration**. Upon the occurrence of any Event of Default hereunder, the Holder of the Bonds, by notice in writing sent to the Issuer and the Company, may declare the principal of the Bonds and the interest accrued thereon to be due and payable immediately, and, upon said declaration, such principal and interest shall become and be immediately due and payable. Notwithstanding such declaration, interest on the Bonds shall accrue until the Bonds are paid in full.

**SECTION 6.03 Other Remedies; Rights of Issuer and Holder**. Upon the happening and continuance of an Event of Default hereunder, the Holder may with or without taking action under Section 6.02 hereof, pursue any available remedy to enforce the performance of or compliance with any other obligation or requirement of this Bond Resolution.

No remedy by the terms of this Bond Resolution conferred upon or reserved to the Holder is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in addition to any other remedy given to the Holder hereunder or now or hereafter existing.

No delay or omission to exercise any right or power accruing upon any default or Event of Default shall impair any such right or power or shall be construed to be a waiver of any such default or Event of Default or acquiescence therein and every such right and power may be exercised from time to time and as often as may be deemed expedient.

No waiver of any default or Event of Default hereunder by the Holder shall extend to or shall affect any subsequent default or Event of Default or shall impair any rights or remedies consequent thereon.

The Holder, as the assignee of interests of the Issuer in and to the Rental Agreement assigned hereby, shall be empowered to enforce each and every right granted to the Issuer under the Rental Agreement, other than Reserved Rights, which may be enforced by the Issuer.

**SECTION 6.04 Discontinuance of Default Proceedings**. In case the Holder shall have proceeded to enforce any right under this Bond Resolution by the appointment of a receiver or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely, then and in every such case the Issuer and the Holder shall be restored to their former positions and rights hereunder and all rights, remedies and powers of the Holder shall continue as if no such proceedings had been taken, subject to the limits of any adverse determination.

**SECTION 6.05 Waiver.** The Holder may waive any default or Event of Default hereunder and its consequences, and rescind any declaration of acceleration of maturity of principal; provided, however, that the Holder shall have no right to waive or rescind any Event of Default with respect to Reserved Rights, and there shall be no such waiver or rescission of any Event of Default under Section 6.01(a) above unless all principal of and interest on the Bonds in arrears shall have been paid or provided for.

**SECTION 6.06 Application of Monies**. All monies received by the Holder pursuant to any right given or action taken under the provisions of this Article VI shall, after payment of the cost and expenses of the proceedings resulting in the collection of such monies and of the expenses, liabilities and advances incurred or made by the Holder, including reasonable attorneys' fees, shall be applied to amounts owing under the Bonds in such order as the Holder shall determine.

## ARTICLE VII
## THE PAYING AGENT; THE CUSTODIAN

**SECTION 7.01 Appointment of Paying Agent and Custodian.** The Issuer may appoint a Paying Agent hereunder. Until a Paying Agent is appointed, references herein to "Paying Agent" shall be deemed references to the Issuer. The Paying Agent shall agree to perform the duties of the Paying Agent under this

Bond Resolution. The Issuer appoints the Company as the initial Custodian for the Project Fund hereunder. The Custodian shall agree to perform its duties hereunder with regard to the Project Fund.

**SECTION 7.02 Resignation; Successor Paying Agent.** The Issuer shall not resign as Paying Agent without the express, written consent of the Company. Any successor Paying Agent may resign only upon giving 60 days prior written notice to the Issuer, the Company, and the Holder of Bonds. In the event of such a resignation or if the Paying Agent is removed, the Company shall designate a successor Paying Agent by notice to the Issuer and the Holder of the Bonds.

**SECTION 7.03 Removal of Paying Agent**. The Paying Agent may be removed at any time, by an instrument or concurrent instruments in writing delivered to the Paying Agent and the Issuer and signed by the Company and the Holder.

**SECTION 7.04 Paying Agency and Custodial Agreements**. The Issuer is authorized to enter into any paying agency or custodial agreement in connection with the appointment of a Paying Agent or Custodian hereunder.

## ARTICLE VIII
## AMENDMENTS, SUPPLEMENTAL BOND RESOLUTIONS

**SECTION 8.01 Supplemental Bond Resolutions**. The Holder of the Bonds shall have the right, from time to time, anything contained in this Bond Resolution to the contrary notwithstanding, to consent to any resolution supplemental hereto for the purpose of modifying, altering, amending, adding to, or rescinding, in any particular, any of the terms or provisions contained in this Bond Resolution or in any supplemental resolution. No supplemental resolution shall be effective until each of the Issuer and the Holder of the Bonds has consented thereto in writing.

**SECTION 8.02 Amendments to the Bond Documents.** The Issuer shall not make any amendment, modification, supplement, waiver, or consent with respect to the Rental Agreement or the other Bond Documents affecting the rights of the Holder without the prior written consent of the Holder. No amendment to the Rental Agreement shall be effective until each of the Issuer and the Company have executed such amendment, and the Holder of the Bonds has consented thereto in writing.

**SECTION 8.03 Effect of Amendments**. Any supplement or amendment which becomes effective in accordance with the provisions of this Article with respect to any Bond shall thereafter be effective for all purposes and the respective rights, duties, and obligations under this Bond Resolution and the related Issuer Document, as applicable, shall thereafter be determined, exercised, and enforced, subject, in all respects, to such supplement or amendment. No notation or legend providing notice of any such amendment shall be required to be made on any affected Bond, provided, however, if any amendment changes any term appearing in such affected Bond, the written consent of the Holder thereof shall be accompanied by an agreement of such Holder to tender such Bond in exchange for a replacement Bond reflecting the amended terms, and as soon as reasonably possible after such amendment becomes effective, a replacement Bond reflecting the amended terms shall be issued in replacement thereof.

## ARTICLE IX
## FINDINGS AND AUTHORIZATIONS

### SECTION 9.01 Additional Findings.

(a)    After careful study and investigation of the nature of the Project, the Issuer hereby finds and determines that the Project constitutes a "project" as defined in O.C.G.A. §§ 36-62-2(6)(N) and 36-80-25 (and not a "project" as described in O.C.G.A. §§ 36-62-2(6)(J) and 36-62-2(6)(H), or in any other provision of the Act defining the term "project" or authorizing "projects"); the Project will increase employment in the territorial area of the Issuer and thereby develop and

promote trade, commerce, industry and employment opportunities for the public good and the general welfare within the territory of the Issuer and will promote the general welfare of the State; that the Project, and the use thereof will each further the public purposes of the Act for which the Issuer was created, and that the Project and the Bonds of all of the series referred to in section 2.01 of this Bond Resolution will each be sound, feasible and reasonable.

(b)    The Issuer further finds and determines that (i) the adoption of this Bond Resolution and the subsequent issuance of the Bonds of all of the Series referred to above to directly or indirectly finance, in whole or in part, the acquisition, construction, installation and modification by the Issuer of the Project does not constitute a "business loan" or confer any other "public benefit" within the meaning of O.C.G.A. § 50-36-1, and (ii) neither the Company nor any other participant in the transaction involving the Bonds of all of the Series referred to above or the Project and their respective counsel constitute an "applicant for public benefits" within the meaning of O.C.G.A. § 50-36-1 in connection with the issuance of such Bonds; therefore, such persons are not subject to Systematic Alien Verification of Entitlement pursuant to such code section in connection with the issuance of such Bonds.

(c)    The Issuer further finds and determines that the Project, being designed by, rented to and used by a private entity for private business purposes, is not a public project and is therefore not subject to the Georgia Local Government Public Works Construction Law (O.C.G.A. § 36-91-1, et seq.), and that the Rental Agreement is not a contract for "physical performance of services" within the meaning of O.C.G.A. §§ 13-10-90 and 13-10-91.

(d)    The Issuer further finds and determines that the economic benefits that will inure to the City of Bainbridge, Decatur County from the Project and the operation thereof and the payments to be made under the Rental Agreement and related purchase options will be equal to or greater in value than the benefits to be derived by the Company under the Rental Agreement, and, therefore, the issuance of the Bonds, and the renting of the Project to the Company under the Rental Agreement and the related purchase options, and the execution and delivery of the Bond Documents do not violate the prohibition in the Georgia Constitution on the payment by public bodies of gratuities to private sector persons.

(e)    The Issuer desires to elect to waive the requirements of O.C.G.A. § 36-82-100, requiring a performance audit or performance review to be conducted with respect to the Bonds of all of the Series referred to above, and in connection therewith, to include language, in bold face type, in the Notice to the Public regarding the validation hearing for such Bonds stating that no performance audit or review will be conducted.

(f)    The Issuer further finds and determines that no payments in lieu of taxes payable pursuant to the Rental Agreement, the Project Agreement, or the PILOT Agreement are pledged to secure payment of any of the Bonds, and the Bonds are therefore not subject to the PILOT Restriction Act (O.C.G.A. § 36-80-16.1).

(g)    This Bond Resolution has been duly adopted and all things necessary to make the Bonds referred to above, when validated, issued and delivered as provided in this Bond Resolution, the legal, valid, binding, and enforceable limited obligation of the Issuer according to the import thereof, and to create a valid pledge of the Security for each Bond, and the execution, issuance, and delivery of the Bonds referred to above, subject to the terms hereof, have in all respects been authorized.

**SECTION 9.02 Authorization of Bond Documents**. The Issuer's execution, delivery, and performance of and under the Bond Documents are hereby authorized. The Rental Agreement, the Bond Purchase Agreement, the Option Agreement, the Security Deed, the Project Agreement, and the PILOT Agreement shall be in substantially the forms, respectively, attached hereto as Exhibits C, D, E, F, G, and

H, subject in each case to such changes, insertions or omissions as may be approved by the Chairman or Vice Chairman of the Issuer, and the execution of the Bond Documents by the Chairman or Vice Chairman and Secretary or Treasurer of the Issuer, which is hereby authorized, shall be conclusive evidence of such approval. Without limiting the generality of the foregoing, and notwithstanding anything to the contrary contained herein, each of the Rental Agreement, Bond Purchase Agreement, Option Agreement, and Security Deed may be dated a date other than as of January 1, 2024, as determined by the Issuer in its discretion. In case any official whose signature shall appear on any Issuer Document shall cease to be such official before delivery of such Issuer Document, such signature shall nevertheless be valid and sufficient for all purposes, the same as if such official had remained in office until such delivery.

SECTION 9.03 Authorization of Validation. In order to effect the issuance of the Bonds, the proceeds of which shall be used for the purposes hereinabove stated, and pursuant to the Constitution and laws of the State, the Chairman or, in his absence or incapacity, the Vice Chairman of the Issuer is hereby authorized and directed to immediately notify the District Attorney of the Southern Judicial Circuit of the action taken by the Issuer, to request said District Attorney to institute proper proceedings to confirm and validate the Bonds and to pass upon the security therefor, and said Chairman or Vice Chairman and Secretary or Treasurer are further authorized to acknowledge service, make answer in such proceedings and take any and all further action and execute and deliver any and all other documents as may be necessary to effect the validation, issuance and delivery of the Bonds.

SECTION 9.04 General Authorization. The Chairman, or in his absence, the Vice Chairman, of the Issuer is hereby authorized, empowered and directed to accept other assignments, instruments and contracts necessary in order to effectuate the purposes of the transactions herein described, and to do and perform all other actions, proceedings and things, and all other agreements, documents, undertakings, certificates, filings, financing statements, recordings, elections, instruments, certified proceedings and closing papers relating to the transactions contemplated by the foregoing, and the Secretary or Treasurer of the Issuer is authorized, empowered and directed to attest the signatures of such Chairman or Vice Chairman, as and if necessary, with the signatures of such officers to be conclusive evidence of their authority to do and perform such actions and things and to execute, deliver and seal such documents.

SECTION 9.05 Ratification. All acts and doings of the officers of the Issuer which are in conformity with the purposes and intents of this Bond Resolution and in the furtherance of the issuance of the Bonds and the related documents shall be, and the same hereby are, in all respects approved and confirmed.

SECTION 9.06 Repealer. All resolutions or parts thereof of the Issuer in conflict with the provisions herein contained are, to the extent of such conflict, hereby superseded and repealed.

## ARTICLE X

## MISCELLANEOUS

SECTION 10.01 Limitation of Rights. With the exception of rights herein expressly conferred, nothing expressed or mentioned in or to be implied from this Bond Resolution or the Bonds are intended or shall be construed to give to any person other than the Paying Agent, the Holder and the Company any legal or equitable right, remedy or claim under or in respect to this Bond Resolution or any covenants, conditions and provisions herein contained; this Bond Resolution and all of the covenants, conditions and provisions herein being intended to be and being for the sole and exclusive benefit of the Paying Agent, the Holder and the Company as herein provided.

SECTION 10.02 Severability. If any provision of this Bond Resolution is held to be in conflict with any applicable statute or rule of law or is otherwise held to be unenforceable for any reason whatsoever, it is the intention of the parties hereto that to the greatest extent permitted by law, such circumstances shall not have the effect of rendering the other provision or provisions herein contained invalid, inoperative, or

unenforceable to any extent whatsoever. The invalidity of any one or more phrases, sentences, clauses, or sections of this Bond Resolution shall not affect the remaining portions of this Bond Resolution or any part thereof.

**SECTION 10.03 Notices**. Except as otherwise provided herein, it shall be sufficient service or giving of any notice, request, complaint, demand, or other paper if the same shall be duly mailed by registered or certified mail, postage prepaid, addressed as set forth below to the Issuer, the Paying Agent, or the Company. The Issuer, the Company, and the Paying Agent, by notice given hereunder, may designate any different addresses to which subsequent notices, certificates or other communications shall be sent.

To the Issuer or the Paying Agent:

DECATUR COUNTY-BAINBRIDGE INDUSTRIAL
    DEVELOPMENT AUTHORITY
100 Boat Basin Circle
Bainbridge, GA 39818
Attention: Chair

With a copy to
(not notice):

King Kozlarek Law LLC
Attn:    Michael E. Kozlarek, Esq.
Post Office Box 565
Greenville, South Carolina 29602-0565

Company:

Safer Human Medicine, Inc.
21 Sheldon Road
Cohasset, Massachusetts 02025
Attention: David Johst, President and General Counsel
Email: dave.johst@saferhm.com

with concurrent copies to:

Savills Inc.
1252 Ingerson Road
Arden Hills, Minnesota 55112
Attn: Ms. Ann Marie Collins
Email: ACollins@savills.us

and

Walter E. Jones, Esq.
Balch & Bingham LLP
30 Ivan Allen, Jr. Boulevard NW
Suite 700
Atlanta, Georgia 30308
Telephone: 404.962.3540
Email:  wjones@balch.com

**SECTION 10.04 Payments Due on Non-Business Days**. In any case where the date of maturity of interest on or principal of the Bonds or the date fixed for redemption of any Bonds shall not be a Business Day, then payment of such interest or principal need not be made on such date but shall be made on the next succeeding Business Day, with the same force and effect as if made on the date of maturity or the date fixed for redemption, and, in the case of such payment, no interest shall accrue for the period from and after such date.

**SECTION 10.05    Binding Effect**. This instrument shall inure to the benefit of and shall be binding upon the Issuer and its successors and assigns.

17

**SECTION 10.06    Captions; Section References.** The captions or headings in this Bond Resolution are for convenience only and in no way define, limit, or describe the scope or intent of any provisions or sections of this Bond Resolution. References herein to sections shall refer to sections of this Bond Resolution, unless the context otherwise requires.

**SECTION 10.07    Governing Law.** This Bond Resolution shall be governed by and interpreted in accordance with the laws of the State.

**SECTION 10.08 Limited Liability of Issuer.** Notwithstanding anything to the contrary, any liability for payment of money and any other liability or obligation which Issuer may incur under the Bonds, this Bond Resolution, or any of the Bond Documents shall not constitute a general obligation of the Issuer but shall constitute limited obligations of the Issuer payable solely from and enforced only against the Security.

**SECTION 10.09 Bond Resolution Constitutes a Contract.** The provisions of this Bond Resolution shall constitute a contract by and between the Issuer and the registered owners of the respective Bonds, and after the issuance of a Bond neither this Bond Resolution nor any of the Bond Documents relating to that Bond shall be repealed, terminated, or amended except as provided herein. The Issuer shall not pass any resolution in any way adversely affecting the rights of a registered owner of any Bond, so long as such Bond shall not have been retired; provided, however, that this covenant shall not be construed as prohibiting modifications hereof or amendments hereto by supplemental resolutions to the extent and in the manner as provided in this Bond Resolution.

[ONE SIGNATURE PAGE AND EIGHT EXHIBITS FOLLOW]
[REMAINDER OF PAGE SUBSTANTIVELY BLANK]

**ADOPTED** December 11, 2023.

**DECATUR COUNTY-BAINBRIDGE INDUSTRIAL DEVELOPMENT AUTHORITY**

By: _____
        Chairman

ATTEST:

_____
Secretary

[ISSUER'S SEAL]