# EXHIBIT E

SPACE ABOVE THIS LINE IS FOR RECORDING DATA

After recording return to.
Michael E. Kozlarek, Esq.
King Kozlarek Law LLC
Post Office Box 565
Greenville, South Carolina 29602

Tax Parcel ID: [_____]

## OPTION AGREEMENT

DATED AS OF JANUARY 1, 2024

BY AND BETWEEN

DECATUR COUNTY-BAINBRIDGE INDUSTRIAL DEVELOPMENT AUTHORITY

AND

SAFER HUMAN MEDICINE, INC.

## OPTION AGREEMENT

**THIS OPTION AGREEMENT** ("Agreement"), dated as of January 1, 2024, is by and between the **DECATUR COUNTY-BAINBRIDGE INDUSTRIAL DEVELOPMENT AUTHORITY** ("Issuer"), the mailing address of which is 100 Boat Basin Circle, Bainbridge, Georgia 39818, Attention: Chair, and **SAFER HUMAN MEDICINE, INC.**, a Delaware corporation ("Company"), the mailing address of which is 21 Sheldon Road, Cohasset, Massachusetts 02025, Attention: President and General Counsel. Any capitalized terms not defined herein shall have the meanings provided in the Bond Resolution.

## WITNESSETH:

**WHEREAS,** the Issuer is issuing the Bonds (as defined below) to directly or indirectly provide monies for the acquisition and installation of the Project (as defined below) for rental to the Company; and

**WHEREAS,** the Issuer and the Company are contemporaneously entering into a Rental Agreement, of even date herewith ("Rental Agreement") relating to the Project. The real property leased by the Lease ("Leased Property") is described on Exhibit A attached hereto and incorporated herein by reference; and

**WHEREAS,** the Company and the Issuer desire that the Company be granted the option to purchase all of the Issuer's right, title and interest in and to the Project upon the terms and provisions as hereinafter set forth;

**NOW, THEREFORE,** in consideration of the Option Fee (defined below) in hand paid by the Company to the Issuer, and other good and valuable consideration, the receipt and sufficiency of all of which are hereby acknowledged by the parties hereto, and for the mutual covenants contained herein, the Issuer and the Company hereby agree as follows:

**1.** **DEFINITIONS.** For purposes of this Agreement, the following terms shall have the following meanings:

        (i) **"Bond Resolution"** shall mean that certain Bond Resolution, adopted by the Issuer on December 11, 2023, authorizing the issuance of the Bonds and certain other transactions detailed therein.

        (ii) **"Bonds"** mean the Issuer's Taxable Revenue Bond (Project Liberty), Series 2023, in the maximum principal amount of $300,000,000.

        (iii) **"Closing"** means the consummation of the purchase and sale transaction contemplated hereby as a result of the exercise (or deemed exercise) of the Option.

        (iv) **"Closing Date"** means the date prescribed herein for the consummation of the Closing under the Option.

        (v) **"Effective Date"** means the date on which this Agreement is fully executed.

        (vi) **"Option"** shall have the meaning set forth in Section 2 herein.

        (vii) **"Option Fee"** means the sum of $10.00.

(viii)   **"Option Term"** means that period of time commencing on the Effective Date and ending on the date, not sooner than the earlier of the expiration or termination of the Rental Agreement, which is thirty (30) days following the date on which the Company receives written notice from the Issuer that the Rental Agreement has expired or terminated and that the Option must be exercised within thirty (30) days or will lapse.

(ix)   **"Permitted Encumbrances"** means the Permitted Encumbrances referred to in the Rental Agreement.

(x)   **"Project"** shall have the meaning set forth in the Rental Agreement, as it exists from time to time.

(xi)   **"Purchase Price"** shall have the meaning set forth in Section 4(a) herein.

2.   **GRANT OF OPTION.** In consideration of the payment of the Option Fee, the Issuer does hereby grant to the Company the exclusive right and option ("Option") to purchase all right, title and interest of the Issuer in and to the Project, including the Leased Property, (as the same shall exist at the time of such purchase, subject to Permitted Encumbrances) during the Option Term upon the terms and conditions as set forth herein. The Issuer hereby confirms the grant of the Option with respect to its interest in the Project.

3.   **EXERCISE OF OPTION.** The Company may exercise the Option, at any time during the Option Term, by giving written notice thereof to the Issuer, with a copy to the Issuer's Counsel. If the Bonds have not theretofore been fully paid and if the Company is not then also the sole owner of the Bonds ("Bondholder"), a copy of such notice shall also be given by the Company to the Bondholder at the address of the Bondholder as reflected on the Register maintained by the Paying Agent (as defined in the Bond Resolution). Such notice shall specify a date and time of the Closing, which shall be no earlier than sixty (60) days and no more than ninety (90) days following the date such notice is sent to the Issuer. The time, date and place of the Closing shall be 10:00 a.m. prevailing Georgia time on the Closing Date at the offices of King Kozlarek Law LLC, Bainbridge, Georgia, or such other time, date and place as the Company and the Issuer may agree. In the event the Company does not exercise the Option during the Option Term, the Issuer shall promptly notify the Company, and the Option shall be deemed exercised (i) within thirty (30) days following such notice and the Option Term shall be deemed to have been extended through such date and the Option validly exercised, and (ii) upon the termination of the Rental Agreement prior to final maturity of the Bonds for any reason.

4.   **SALE OF PROPERTY.** In the event that the Company exercises its Option as provided for in the preceding paragraph, the Issuer agrees to sell and the Company agrees to buy the Project (as it then exists) in accordance with the following terms and conditions:

(a)   **Purchase Price.** At the Closing, the Company shall pay the Purchase Price to the Issuer upon the exercise of the Option, which shall consist of (i) the sum of $100.00; (ii) the sum, if any, required to cause the Bonds to be retired in full if the Bonds have not been fully paid (if the Company is then the owner of the Bonds, the Company may mark the Bonds "cancelled" and surrender the Bonds to the Issuer); and (iii) all other sums, if any, then due to the Issuer under the Rental Agreement, including additional rent, fees, expenses, indemnification, payments in lieu of taxes or otherwise payable under the Rental which have not been paid.

(b)   **Closing Procedure.** At the Closing, the Issuer shall, upon payment of the Purchase Price, convey the Project to the Company "as is, where is" by Limited Warranty Deed and Bill of Sale, as applicable.

(c) **Closing Costs**. All costs relating to the Closing, including, but not limited to, the reasonable fees and expenses of counsel to the Issuer, to the Company and to any lender, shall be paid by the Company.

(d) **Default by the Issuer; Remedies of the Company**. In the event the Issuer fails to convey the Project pursuant to the terms and provisions of this Agreement, the Company shall be entitled as its exclusive remedies to sue for specific performance, it being understood that the Company shall not have an adequate remedy at law.

(e) **Status Pending Closing**. Until and unless legal title to the Project is transferred to the Company at Closing, the Company shall not, by virtue of this Agreement, acquire title to the Project, and the risk of loss of the Project shall remain with the tenant under the Rental Agreement.

(f) **Documents**. The Issuer and the Company agree that such documents as may be legally necessary or reasonably appropriate to carry out the terms of this Agreement shall be executed and delivered by each party to the other at the Closing.

5. **MISCELLANEOUS.**

(a) **Notice**. All notices, demands and/or consents provided for in this Agreement shall be in writing and shall be given as provided in the Rental Agreement for the giving of notices.

(b) **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia.

(c) **Successors and Assigns**. This Agreement shall apply to, inure to the benefit of and be binding upon and enforceable against the parties hereto and their permitted respective heirs, successors and/or assigns. The Company may assign this Agreement only in connection with an assignment of the Rental Agreement permitted by the terms and conditions thereof or with the consent of the Issuer.

(d) **Headings**. The headings inserted at the beginning of each paragraph and/or subparagraph of this Agreement are for convenience of reference only and shall not limit or otherwise affect or be used in the construction of any terms or provisions hereof.

(e) **Entire Agreement**. This Agreement, together with the Bond Documents (as defined in the Bond Resolution), contains all of the terms, promises, covenants, conditions and representations made or entered into by or between the Issuer and the Company and supersedes all prior discussions and agreements, whether written or oral, between the Issuer and the Company with respect to the Option and all other matters contained herein and constitutes the sole and entire agreement between the Issuer and the Company with respect thereto. This Agreement may not be modified or amended unless such amendment is set forth in writing and executed by both the Issuer and the Company with the formalities hereof.

(f) **Public Purpose of Option to Purchase**. The Issuer and the Company acknowledge that the Option constitutes a material inducement to the Company to locate its operations in Decatur County, Georgia and thereby promote industry and create employment opportunities in Decatur County, Georgia, and that in granting such Option, the Issuer is considering the entire transaction as a whole, including the promotion and expansion for the public good and welfare industry, trade and commerce within Decatur County, Georgia and the reduction of unemployment.

(g) **Rejection in Bankruptcy**. In the event the Issuer ever files a petition for relief or becomes the subject of a proceeding under any chapter or provision of Title 11 of the United States Code

3

("Bankruptcy Code"), this Agreement, to the extent subject to rejection pursuant to the Bankruptcy Code, shall be subject to, and the Company shall be entitled to the full protections of, Section 365(i) of the Bankruptcy Code. The Option under this Agreement shall be fully enforceable against and binding upon the Issuer notwithstanding the termination, rejection, or disaffirmance of the Rental Agreement or a bankruptcy, insolvency or other legal proceeding or otherwise.

(h)    **Limited Obligation**. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, ANY LIABILITY FOR THE PAYMENT OF MONEY AND ANY OTHER LIABILITY OR OBLIGATION, WHICH THE ISSUER MAY INCUR UNDER OR PURSUANT TO THIS AGREEMENT, SHALL NOT CONSTITUTE ITS GENERAL OR PECUNIARY OBLIGATION BUT SHALL CONSTITUTE A SPECIAL OR LIMITED OBLIGATION OF THE ISSUER REPRESENTING A CLAIM AGAINST THE SECURITY PLEDGED TO THE PAYMENT OF THE BONDS.

(i)    **Status of Property**. COMPANY ACKNOWLEDGES THAT UPON EXERCISE OF ITS PURCHASE OPTION HEREUNDER, THE ISSUER'S INTEREST IN THE PROJECT WILL BE CONVEYED TO THE COMPANY "AS-IS" AND WITH ALL FAULTS. COMPANY ACKNOWLEDGES AND AGREED THAT EXCEPT AS SPECIFICALLY SET FORTH HEREIN, THE ISSUER DOES NOT MAKE AND SPECIFICALLY DISCLAIMS ANY OTHER REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE PROJECT. EXCEPT AS SPECIFICALLY SET FORTH IN THE RENTAL AGREEMENT, THE ISSUER MAKES NO WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO THE CONDITION OF THE PROJECT OR THAT IT WILL BE SUITABLE FOR THE COMPANY'S PURPOSES OR NEEDS. THE PROJECT SHALL BE PROVIDED TO THE COMPANY IN ALL CASES SUBJECT TO PERMITTED ENCUMBRANCES.

(j)    **Time is of the Essence**. Time is of the essence in the performance of the parties' obligations and observance of the terms and conditions contained in this Agreement.

(k)    **Conflicting Provisions**. In the event that there exists a conflict between any term, condition, or provision contained within this Agreement, and in any term, condition, or provision contained within the Project Agreement, the term, condition, or provision contained within the Project Agreement shall control.

[Remainder of Page Intentionally Left Blank]

4

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed under proper seal.

Signed and sealed in the presence of:

**DECATUR COUNTY-BAINBRIDGE INDUSTRIAL DEVELOPMENT AUTHORITY**

_____
Unofficial Witness

By: _____
        Chair

_____
Notary Public

ATTEST:

My Commision Expires:_____
[NOTARY SEAL]

_____
Acting Secretary
[SEAL]

*[Signature Page -- Option Agreement-Project Liberty]*

Signed and sealed in the presence of:          **SAFER HUMAN MEDICINE, INC.**

Unofficial Witness

By: _____
Name: _____
Title:_____

Notary Public

ATTEST:

My Commision Expires:_____
[NOTARY SEAL]

_____
Title: _____

*[Signature Page – Option Agreement-Project Liberty]*

EXHIBIT A

Legal Description of Leased Property

[TO BE INSERTED]

**EXHIBIT F**
**SECURITY DEED**
[SEE ATTACHED]

25