# EXHIBIT F

SPACE ABOVE THIS LINE IS FOR RECORDING DATA

THIS INSTRUMENT SECURES A BOND ISSUE BY A PUBLIC AUTHORITY OF THE STATE OF GEORGIA, AND A PUBLIC AUTHORITY OF THE STATE OF GEORGIA IS A PARTY TO THIS INSTRUMENT. THEREFORE, THIS INSTRUMENT IS NOT SUBJECT TO INTANGIBLE RECORDING TAX PURSUANT TO RULE 560-11-8.14(1) ADOPTED BY THE DEPARTMENT OF REVENUE, PROPERTY TAX DIVISION.

*After recording return to.*
Michael E. Kozlarek, Esq.
King Kozlarek Law LLC
Post Office Box 565
Greenville, South Carolina 29602

**Tax Parcel ID:** [_____]

## DEED TO SECURE DEBT AND SECURITY AGREEMENT

**THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT** ("Deed to Secure Debt") is entered into as of January ___, 2024, by the Decatur County-Bainbridge Industrial Development Authority a public body corporate and politic of the State of Georgia ("Grantor"), having a mailing address of [_____], and [TBD Company, LLC], a Delaware limited liability company, its successors and assigns, as the registered owner of the Bonds described below ("Grantee"), having a mailing address of [_____]. Capitalized terms used herein, but not defined herein, shall have the meanings set forth in the Rental Agreement or the Bond Resolution (each as hereinafter defined).

## WITNESSETH:

**THAT FOR AND IN CONSIDERATION** of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in order to secure the indebtedness and other obligations hereinafter set forth, Grantor does hereby grant, bargain, sell, alien, remise, release, convey, assign, transfer, hypothecate, pledge, deliver, set over, warrant and confirm unto Grantee, its successors and assigns forever, with the power of sale, all right, title and interest of Grantor (subject to Section 12 hereof and provided that the Grantor expressly reserves to itself, and the foregoing grants and conveyances made by this instrument are subject in all respects to, the Reserved Rights (as defined in the Bond Resolution)), which the parties hereto acknowledge is in and to the following described property (collectively, "Premises"):

NOTE TO SUPERIOR COURT CLERK: THIS DEED TO SECURE DEBT SECURES AN ORIGINAL PRINCIPAL BALANCE OF UP TO: [_____], WITH AN INITIAL MATURITY DATE OF [_____].

(a) That certain real property described in EXHIBIT A attached hereto and incorporated herein by reference ("Land") and all of Grantor's right, title and interest in and to all buildings and other improvements now or hereafter located in, on or about the Land, and all of Grantor's building materials intended for incorporation but not incorporated into the improvements to the Land, and all fixtures used in connection with such improvements, specifically including, without limitation, appliances, gas and electric fixtures and systems, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures and systems, carpeting and other floor coverings, water heaters, air conditioning apparatus and systems, window screens, awnings, storm sashes and any other goods affixed to such improvements, whenever acquired by Grantor and now or hereafter located in, upon or under the Land, together with all additions and accessions thereto and replacements and proceeds thereof ("Improvements");

(b) All rents, issues, profits, royalties, income and other benefits derived from the Land and the Improvements ("Rents"), (subject to the right, power and authority hereinafter given to Grantor to collect and apply such Rents,) and the proceeds from any insurance or condemnation award relating to the Land and the Improvements;

(c) All easements, rights-of-way and rights used in connection with the Land and the Improvements or as a means of access thereto, and all tenements, hereditaments, and appurtenances thereof and thereto;

(d) the Rental Agreement dated as of December 1, 2023, by and between the Grantor and the Grantee (in such capacity, "Tenant"), which permits the Tenant to use and possess the Premises ("Rental Agreement"), other than Reserved Rights of the Grantor, and (ii) any other leases now existing or hereafter made and affecting the Land or the Improvements or any part thereof, as said leases may have been or may from time to time be hereafter modified, extended and renewed, together with any and all guarantees of any leases affecting all or any part of the Land or the Improvements (collectively, "Leases") and all security deposits received in respect of any Lease;

(e) All machinery, fixtures, equipment and other personal property now or hereafter owned by Grantor or in which Grantor has interests or has acquired with the proceeds of the Bonds or pursuant to the provisions of the Rental Agreement, and any renewals, replacements, enhancements, accessories, attachments, licenses or software therefor or relating thereto (together, "Property"), including without limiting the generality of the foregoing the property described in EXHIBIT B attached hereto and provided a part hereof by reference;

(g) All general intangibles, now existing or hereafter owned or acquired or arising or in which Grantor now has or hereafter acquires any rights relating to the use of the Property, including but not limited to, causes of action, warranties, service or other contracts, guarantees, licenses, rights and claims against carriers and shippers, leases and claims under insurance policies;

(h) All cash, if any, from time to time on deposit in the Bond Fund and Project Fund (as such terms are defined in the Bond Resolution) created by the Bond Resolution, and investments, if any, from time to time held for the credit of the Bond Fund and the Project Fund, and investment income earned on such investments, subject to the rights of the Tenant, as user of the Premises under the Rental Agreement, to have amounts in the Project Fund applied as provided in the Rental Agreement and in the Bond Resolution;

(i) All surveys, environmental reports, warranties, bonds, letters of credit or other security for construction of the Project, guarantees, business and building licenses and permits, architects' and engineers' plans, blueprints and drawings, construction, professional and other contracts and books and records

relating to the Project; and all other, further or additional title, estates, options, privileges, interest or rights which the Grantor may now or hereafter acquire in and to the Project and the Rental Agreement; and

(j) All proceeds and products of the foregoing, including, without limitation, any insurance proceeds.

**TO HAVE AND TO HOLD** the Premises and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of Grantee, subject to Reserved Rights, forever in fee simple; and Grantor covenants that Grantor is lawfully seized of the Premises as aforesaid and has good right to convey the same, that, other than any encumbrances and title exceptions on the Premises in existence at the time of recording of this Deed to Secure Debt and any other permitted encumbrances described in the Rental Agreement.

**PROVIDED, HOWEVER**, these presents are upon the express condition that, if Grantor shall well and truly satisfy the Obligations as set forth in this Deed to Secure Debt and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in this Deed to Secure Debt, these presents and the estate and security title hereby granted shall be cancelled and surrendered of record in the manner provided by law.

This Deed to Secure Debt is a deed passing the title to the Premises to Grantee and is made under the laws of the State of Georgia relating to deeds to secure debt and is not a mortgage (and with respect to personal property this Deed to Secure Debt is a security agreement granting security interests) and is given to secure the payment of the following described obligations (collectively, "Obligations"): (a) the payment of principal of, interest on and other amounts owing with respect to the Decatur County-Bainbridge Industrial Development Authority Taxable Revenue Bonds (Project Liberty), Series 2023, in the maximum aggregate principal amount of $300,000,000, in one or more series, together with all renewals, modifications, consolidations, replacements and extensions thereof ("Bonds"), which Bonds are to be issued by the Grantor pursuant to a Bond Resolution adopted on November 14, 2023 ("Bond Resolution"), and which Bonds are beneficially owned by the Grantee; (b) any and all additional advances made or costs or expenses incurred by Grantee to protect or preserve the Premises or the security interest created hereby, or for taxes, assessments or insurance premiums as hereinafter provided, or for performance of any of Grantor's obligations hereunder or under the Bonds, or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Premises at the time such advances are made or costs or expenses incurred); (c) all amounts owing to Grantee, as holder of the Bonds, under the Rental Agreement and any Leases by the lessee(s), sublessee(s) or tenant(s) thereunder ("Lessee(s)"); (d) all amounts owing by the Grantor or the Lessee(s) to Grantee under the documents relating to or securing the Bonds ("Bond Documents"); and (e) any other obligation owing under or by its terms secured by this Deed to Secure Debt, however and whenever incurred or evidenced, whether expressed or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, consolidations, replacements and extensions thereof.

**Covenants and Agreements.** Grantor hereby further covenants and agrees with Grantee as follows:

**Section 1. Payment of Obligations.** Subject to the limitations contained in the Bond Resolution and the Bonds, Grantor shall punctually pay the Obligations as provided herein and in the Bond Resolution, the Bonds and the Rental Agreement, in the coin and currency of the United States of America which is legal tender for the payment of public and private debts. Said Obligations shall be payable solely from the payments received from the Tenant under the Rental Agreement and the other Security pledged therefor.

**Section 2. Enforcement of Rental Agreement.** So long as the Rental Agreement is in effect, the Grantee shall be entitled to enforce the Tenant's obligations under the Rental Agreement, provided, however, and notwithstanding anything herein to the contrary, only the Grantor shall be entitled to declare defaults with respect to and to enforce the Grantor's Reserved Rights.

**Section 3. Insurance.** The Rental Agreement requires the Tenant to carry, or cause to be carried, certain insurance relating to the Premises. The Grantor shall have the right to enforce the provisions of the Rental Agreement relating to insurance and all other Reserved Rights.

**Section 4. Conveyance of Premises.** Except as expressly permitted in the Rental Agreement, Grantor shall not sell, convey, assign, transfer, hypothecate, mortgage, or encumber the Premises, or any part thereof or interest of Grantor therein, legal or equitable (or enter into any agreement to do so), without the prior written consent of Grantee, which consent may be granted or withheld in Grantee's sole discretion.

**Section 5. Net Proceeds of Insurance, Eminent Domain.** The net proceeds of casualty insurance relating to the Premises, the net proceeds of any taking by eminent domain or sale in lieu thereof, of any of the Premises or the net proceeds of any other sale of the Premises, or any part thereof, shall, upon receipt, be applied as provided in the Rental Agreement. Upon condemnation of the Premises or any part thereof, this Deed to Secure Debt shall become a lien, charge and encumbrance upon the proceeds or award realized as a result of any such proceeding or of any settlement or payment made in lieu of any such proceeding to which the tenant under the Rental Agreement is entitled ("Condemnation Proceeds"). Grantor further covenants and agrees that Grantee may (and is hereby authorized and empowered but not required to) collect and receive any Condemnation Proceeds and, if received by Grantor, such Condemnation Proceeds shall be applied pursuant to the terms of the Rental Agreement. Grantor hereby grants to Grantee a security interest in any Condemnation Proceeds to the extent of the interest of the Grantee therein and hereby agrees to execute such further assignments of the Condemnation Proceeds as Grantee may require.

**Section 6. Right to Cure; Protection of Security.** If Grantor shall fail in any of the covenants and provisions contained in this Deed to Secure Debt, Grantee may (but shall not be obligated to) take any action Grantee deems necessary or desirable to prevent or cure any such default or failure. Grantee shall have the right to enter upon the Premises to such extent and as often as Grantee, in its sole discretion, deems necessary or desirable in order to prevent or cure any such default or failure by Grantor or Lessee(s), as applicable. Grantee may expend such sums of money as Grantee, in its sole discretion, deems necessary for any such purpose, and all sums so expended by Grantee, together with interest thereon from the date of each such payment at the default rate provided for in the Bonds shall constitute additional obligations owed Grantee under the Bonds. All sums so expended by Grantee, and the interest thereon, shall be added to and secured by the lien of this Deed to Secure Debt. Grantee may inspect the Premises at all reasonable times, and access thereto shall be permitted for that purpose to Grantee and its representatives.

**Section 7. Assignment of Leases and Rents.** By this Deed to Secure Debt, the Grantor has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey absolutely unto the Grantee the Rental Agreement (subject to Reserved Rights) and the Basic Rent thereunder, together with all other Leases, subject to the Permitted Encumbrances applicable thereto, to have and to hold the leases and the rents under such Leases forever.

**Section 8. Security Agreement.** This Deed to Secure Debt shall constitute a "security agreement," a "financing statement" and a "fixture filing" pursuant to the Uniform Commercial Code in effect in the State of Georgia ("Georgia UCC") for any items constituting a part of the Premises which, under applicable law, may be subjected to a security interest pursuant to the Georgia UCC, and Grantor hereby grants Grantee a security interest in such items. Without the prior written consent of the Grantee, Grantor shall not create or suffer to be created any other security interest in such items, including replacements and additions

thereto. The name of Grantor, as Debtor, and Grantee, as Secured Party and the respective addresses of the Grantor, as "Debtor" and Grantee, as "Secured Party" are set forth in the introductory paragraph of this Deed to Secure Debt. Description of the collateral: Fixtures and other personal property as described in the granting clause hereof. Description of real estate to which the collateral is attached or upon which it is or will be located is set forth on Exhibit A attached hereto.

Subject to Section 12 hereof, in case any one or more Events of Default shall have occurred and be continuing, the Grantee shall have, in addition to all other rights and remedies given to it by this Deed to Secure Debt, those allowed by law, and the rights and remedies of a secured party under the Georgia UCC as enacted and in effect in the applicable jurisdiction. Without limiting the generality of any rights and remedies conferred upon the Grantee under this Section 8, the Grantee may, subject to Section 12 hereof and to the full extent permitted by law: (a) Enter upon the Premises, exclude therefrom Grantor, Lessee(s) or any affiliate thereof, and take immediate possession of the Improvements, either personally or by means of a receiver appointed by a court of competent jurisdiction, using all lawful, necessary force to do so; (b) Use, operate, manage and control the Improvements in any lawful manner; (c) Collect and receive all rents, income, revenue, earnings, issues and profits therefrom; and (d) Maintain, repair, renovate, alter or remove the Improvements as the Grantee may determine in its discretion, and any monies so collected or received by the Grantee shall be applied to, or may be accumulated for application upon, satisfaction of the Obligations or any other sums secured by this Deed to Secure Debt.

**Section 9. Events of Default.** The following shall constitute defaults or events of default hereunder (each a "Default" or "Event of Default"):

(a) Failure in payment in any portion of the Obligations within any cure period provided therefor.

(b) The occurrence of an Event of Default, as such term is defined therein, under the Rental Agreement.

(c) Failure by Grantor to keep, perform or observe any covenant, term or condition required to be kept, performed or observed by Grantor under this Deed to Secure Debt, the Bonds, or any of the other Obligations, within thirty (30) days following Grantor's receipt of written notice of such failure from Grantee.

**Section 10. Acceleration and Other Rights of Grantee Upon Default.** Subject to Section 12 hereof, if an Event of Default shall have occurred and be continuing, then the entire Obligations shall, at the option of Grantee, immediately be treated for the purposes of this Deed to Secure Debt as due and payable in whole without notice or demand, time being of the essence, and Grantee, at its option, may do any one or more of the following (and, if more than one, either concurrently or independently, and in such order as Grantee may determine in its discretion), all without regard to the adequacy or value of the security for the Obligations:

(a) Enter upon and take possession of the Premises without the appointment of a receiver, or an application thereof; at its option, operate the Premises; at its option, exclude Grantor, the Lessee and their agents and employees wholly therefrom; at its option, employ a managing agent of the Premises; and at its option, exercise any one or more of the rights and powers of Grantor to the same extent as Grantor or Lessee(s) could, either in its own name, or in the name of Grantor or Lessee(s); and receive the rents, incomes, issues and profits of the Premises. Grantee shall have no obligation to discharge any duties of a landlord to any tenant or to incur any liability as a result of any exercise by Grantee of any rights hereunder; and Grantee shall not be liable for any failure to collect rents, issues, profits or revenues, nor liable to account for any rents, issues, profits or revenues unless actually received by Grantee.

(b) Apply, as a matter of strict right, without notice and without regard to the solvency of any party bound for its payment, for the appointment of a receiver to take possession of and to operate the Premises and to collect and apply the incomes, rents, issues, profits and revenues thereof without notice to Grantor, Lessee(s) or any other party (Grantor hereby waiving such notice). If such receiver should be appointed, or if there should be a sale of the Premises, as provided in this Section 10, Grantor, or any person in possession of the Premises thereunder, as tenant or otherwise, shall become a tenant at will of the receiver or of the purchaser and may be removed by a writ of ejectment, summary ejectment or other lawful remedy.

(c) Pay, perform or observe any term, covenant or condition of this Deed to Secure Debt and any of the other Bond Documents, and all payments made or costs or expenses incurred by Grantee in connection therewith with interest thereon at the default rate provided in the Bonds shall constitute additional obligations owed Grantee under the Bonds and shall be secured hereby. The necessity for any such actions and the amounts to be paid shall be determined by Grantee in its discretion. Grantee is hereby empowered to enter and to authorize others to enter upon the Premises or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Grantor or any person in possession holding under Grantor. The remedies set forth in this Section 10(c) shall be exercisable by Grantee, and any and all payments made or costs or expenses incurred by Grantee in connection therewith with interest thereon at the default rate set forth in the Bonds shall constitute additional obligations owed Grantee under the Bonds and shall be secured hereby, notwithstanding the fact that such remedies were exercised and such payments made and costs incurred by Grantee after the filing by Grantor of a voluntary case or the filing against Grantor of an involuntary case pursuant to or within the meaning of the Bankruptcy Code, Title 11 U.S.C., or after any similar action pursuant to any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable to Grantor, Grantee, the Obligations or any of the Bond Documents.

(d) After acceleration of the Obligations, sell the Premises or any part of the Premises at one or more public sale or sales at the usual place for conducting sales of the county in which the Land or any part of the Land is situated, to the highest bidder for cash, in order to pay the Obligations, and all expenses of sale and of all proceedings in connection therewith, including reasonable attorneys' fees (the Company's obligation to pay attorneys' fees being to pay reasonable out-of-pocket fees actually incurred and not statutory attorneys' fees provided by O.C.G.A. § 13-1-11), after first (i) providing Grantor written notice of the initiation of the proceedings to exercise the power of sale no later than thirty (30) days prior to the date of the proposed sale, in accordance with O.C.G.A. §44-14-162.2, and (ii) advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which sheriffs sales are advertised in said county, all other notice being hereby waived by Grantor. At any such public sale, Grantee may execute and deliver to the purchaser a conveyance of the Premises or any part of the Premises, subject to the Reserved Rights, and to this end Grantor hereby constitutes and appoints Grantee the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor and Lessee(s) of all right, title and equity that Grantor and Lessee(s) may have in and to the Premises and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed, and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor and Lessee(s). The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and shall not be exhausted by one exercise thereof but may be exercised until full payment of all of the

Obligations. In the event of any sale under this Deed to Secure Debt by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Premises may be sold as an entirety or in separate parcels and in such manner or order as Grantee in its discretion may elect, and if Grantee so elects, Grantee may sell the personal property covered by this Deed to Secure Debt at one or more separate sales in any manner permitted by the Georgia UCC, and one or more exercises of the powers herein granted shall not extinguish nor exhaust such powers, until the entire Premises are sold or the Obligations are paid in full. Grantee may, at its option, sell the Premises subject to the rights of any tenants of the Premises, and the failure to make any such tenants parties to any foreclosure proceedings and to foreclose their rights will not be asserted by Grantor or Lessee(s) to be a defense to any proceedings instituted by Grantee to collect the Obligations. If the Obligations are now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other security deeds, Grantee may at its option exhaust the remedies granted under any of said security either concurrently or independently, and in such order as Grantee may determine in its discretion. Upon any foreclosure sale, Grantee may bid for and purchase the Premises and shall be entitled to apply all or any part of the Obligations as a credit to the purchase price. In the event of any such foreclosure sale by Grantee, Grantor and Lessee(s) shall be deemed tenants holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over. In case Grantee shall have proceeded to enforce any right, power or remedy under this Deed to Secure Debt by foreclosure, entry or otherwise or in the event Grantee commences advertising of the intended exercise of the sale under power provided hereunder, and such proceeding or advertisement shall have been withdrawn, discontinued or abandoned for any reason, then in every such case: (i) Grantor and Grantee shall be restored to their former positions and rights; (ii) all rights, powers and remedies of Grantee shall continue as if no such proceeding had been taken; (iii) each and every Default declared or occurring prior or subsequent to such withdrawal, discontinuance or abandonment shall be deemed to be a continuing Default; and (iv) neither this Deed to Secure Debt, nor the Bonds, nor the Obligations, nor any other Bond Document shall be or shall be deemed to have been reinstated or otherwise affected by such withdrawal, discontinuance or abandonment; and Grantor hereby expressly waives the benefit of any statute or rule of law now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with this sentence.

(e) Proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Obligations or the performance of any term, covenant, condition or agreement of this Deed to Secure Debt or any of the other Bond Documents or any other right, or (ii) to pursue any other remedy available to Grantee.

(f) Apply any moneys and proceeds received by Grantee as a result of the exercise by Grantee of any right conferred under this Section 10, in such order as Grantee in its discretion may elect, against (i) all costs and expenses, including reasonable attorneys' fees incurred in connection with the operation of the Premises (the Grantee's obligation to pay attorneys' fees being to pay reasonable out- of-pocket fees actually incurred and not statutory attorneys' fees provided by O.C.G.A. § 13-1-11), the performance of Grantor's and any Lessee's obligations under the Leases and the collection of the rents thereunder; (ii) all costs and expenses, including reasonable attorneys' fees, incurred in the collection of any or all of the Obligations (the Grantee's obligation to pay attorneys' fees being to pay reasonable out-of-pocket fees actually incurred and not statutory attorneys' fees provided by O.C.G.A. § 13-1-11), including those incurred in seeking to realize on or to protect or preserve Grantee's interest in any other collateral securing any or all of the Obligations; (iii) any or all unpaid principal on the Obligations; (iv) any other amounts owing under the Bond Documents;

and (v) accrued interest and charges on any or all of the foregoing.

**Section 11. Delay Not to Operate as Waiver; Etc.** No delay or forbearance by Grantee in exercising any rights, hereunder or otherwise afforded by law, shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder, and all such rights shall be cumulative. In case Grantee voluntarily or otherwise shall become a party to any suit or legal proceeding to protect the Premises or the lien of this Deed to Secure Debt, an amount sufficient to save Grantee harmless for any amounts paid, including all reasonable costs, charges and attorneys' fees incurred in any such suit or proceeding (the Grantee's obligation to pay attorneys' fees being to pay reasonable out-of- pocket fees actually incurred and not statutory attorneys' fees provided by O.C.G.A. § 13-1-11), shall be additional Obligations owed Grantee under the Bonds, to the extent they may lawfully be so treated, which obligations shall be secured by this Deed to Secure Debt. No right, power or remedy conferred upon or reserved to Grantee by this Deed to Secure Debt, or the Bonds, or the Bond Documents is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute. No act of the Grantee shall be construed as a waiver or as an election to proceed under any provision herein or the other Bond Documents evidencing the loan or securing the same to the exclusion of any other provisions, and Grantee shall be entitled to enforce all remedies severally or concurrently as it shall see fit. No release or subordination by Grantee of any part of the Premises or any other property, collateral or obligation securing the Obligations or any other indebtedness secured by this Deed to Secure Debt shall release or impair the lien or title of unreleased property.

**Section 12.   Waiver of Rights.**   NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, ALL PROVISIONS OF THIS SECTION AND THIS AGREEMENT ARE SUBJECT IN ALL RESPECTS TO THE LAST PARAGRAPH OF THIS SECTION 12. BY EXECUTION OF THIS DEED TO SECURE DEBT, GRANTOR EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT OF GRANTEE TO ACCELERATE THE OBLIGATIONS AND ANY OTHER INDEBTEDNESS AND THE POWER OF ATTORNEY GIVEN HEREIN TO GRANTEE TO SELL THE PREMISES BY NON- JUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED TO SECURE DEBT OR THE BONDS OR ANY OTHER OBLIGATIONS; (B) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES OF AMERICA (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, (1) TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED TO SECURE DEBT OR THE BONDS OR ANY OTHER OBLIGATIONS; AND (2) CONCERNING THE APPLICATION, RIGHTS OR BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALING, FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; (C) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED TO SECURE DEBT AND ANY AND ALL QUESTIONS OF GRANTOR REGARDING THE LEGAL EFFECT OF THIS DEED TO SECURE DEBT AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR, AND GRANTOR HAS CONSULTED WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED TO SECURE DEBT; AND (D) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY,

INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR TRANSACTION AND THAT THIS DEED TO SECURE DEBT IS VALID AND ENFORCEABLE BY GRANTEE AGAINST GRANTOR IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF. NOTWITHSTANDING THE FOREGOING OR ANYTHING ELSE HEREIN TO THE CONTRARY, THE GRANTOR DOES NOT WAIVE ANY OF ITS RESERVED RIGHTS.

Grantor hereby waives any rights or remedies on account of any extensions of time, releases granted or other dealings between the Grantee and any subsequent owner of the Premises herein conveyed or pledged. The foregoing waiver shall not be construed as affecting the Grantor's Reserved Rights or affecting or otherwise amending the covenants of the Grantor in Section 4 hereof. Grantor waives the benefit of all laws now existing or that hereafter may be enacted providing for (i) any appraisement before sale of any portion of the Premises, and (ii) in any way extending the time for the enforcement of the collection of the Obligations or the debt evidenced thereby or any of the other Obligations. To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time insist upon, plead, claim or seek to take the benefit or advantage of any law now or hereafter in force providing for any exemption (including homestead exemption), appraisement, valuation, stay, extension, redemption, or extension, and Grantor and Grantor's heirs, devisees, representatives, successors and assigns, and for any and all persons claiming any interest in the Premises, to the extent permitted by law, hereby waive and release all rights of valuation, appraisement, redemption, stay of execution, notice of election to mature or declared due the whole of the secured indebtedness and marshaling in the event of foreclosure of the liens hereby created. Grantor further waives any and all notices including, without limitation, notice of intention to accelerate and of acceleration of the Obligations.

During the existence of an Event of Default and immediately upon the commencement of any action, suit or other legal proceedings by the Grantee to obtain judgment for the Obligations, or of any other nature in aid of the enforcement of the Rental Agreement, of the Bonds, of the Bond Resolution, of any other Bond Document or of this Deed to Secure Debt, the Grantor will, if required by the Grantee, consent to the appointment of a receiver or receivers of the Premises and of all the earnings, revenues, rents, issues, profits and income thereof. Nothing herein shall be deemed to require the commencement of a suit or the consent of the Grantor as a condition precedent for the Grantee's right to the appointment of a receiver or the exercise of any other rights or remedies available to the Grantee. Notwithstanding the appointment of any receiver, liquidator or trustee of the Grantor, or of any of its property, or of the Premises or any part thereof, the Grantee shall be entitled to retain possession and control of all property now and hereafter covered by this Deed to Secure Debt.

NOTHING IN THIS SECTION OR ELSEWHERE IN THIS DEED TO SECURE DEBT SHALL BE CONSTRUED AS WAIVING, AFFECTING OR AMENDING THE GRANTOR'S RESERVED RIGHTS. IN ADDITION, AND NOTWITHSTANDING ANYTHING IN THIS SECTION 12 OR ANYTHING ELSE IN THIS DEED TO SECURE DEBT TO THE CONTRARY, SO LONG AS THE GRANTEE OR ANY AFFILIATE THEREOF IS THE TENANT UNDER THE RENTAL AGREEMENT, (A) THE GRANTEE SHALL HAVE NO RIGHT TO DECLARE ANY DEFAULT OR EVENT OF DEFAULT HEREUNDER OR TO TAKE ANY REMEDIAL ACTION WHATSOEVER HEREUNDER TO THE EXTENT THAT SUCH DEFAULT OR EVENT OF DEFAULT IS CAUSED BY OR IS THE RESULT OF ANY ACTION, INACTION, DEFAULT OR FAILURE OF THE TENANT TO COMPLY WITH ANY OF ITS OBLIGATIONS UNDER THE RENTAL AGREEMENT ("TENANT DEFAULT"), WITHOUT THE EXPRESS WRITTEN CONSENT OF THE GRANTOR, AND (B) NOTHING IN THIS DEED TO SECURE DEBT WILL GRANT, PROVIDE OR BE CONSTRUED GRANT OR PROVIDE TO THE GRANTEE OR THE

TENANT ANY GREATER RIGHTS IN AND TO THE PREMISES THAN THOSE POSSESSED BY THE TENANT UNDER THE RENTAL AGREEMENT, EXCEPT FOR SECTION 4 HEREOF, UNLESS AND UNTIL AN EVENT OF DEFAULT (OTHER THAN A TENANT DEFAULT) OCCURS AND IS CONTINUING HEREUNDER. ANY FORECLOSURE HEREUNDER AND ACQUISITION BY THE GRANTEE (OR ITS DESIGNEE) OF THE RIGHTS OF THE GRANTOR UNDER THE RENTAL AGREEMENT MAY HAVE ADVERSE PROPERTY TAX CONSEQUENCES UPON THE GRANTEE AND TENANT UNDER THE RENTAL AGREEMENT. THE RIGHTS OF THE GRANTEE HEREUNDER ARE IN ALL RESPECTS SUBORDINATE TO THE RIGHTS OF THE GRANTOR UNDER THE OPTION AGREEMENT OF EVEN DATE HEREWITH BY AND BETWEEN THE GRANTOR AND THE GRANTEE. SO LONG AS THE GRANTEE OR ANY AFFILIATE THEREOF IS THE TENANT UNDER THE RENTAL AGREEMENT, COMMENCEMENT OF ANY FORECLOSURE ACTION HEREUNDER SHALL BE DEEMED TO BE AN EXERCISE BY GRANTEE OF ITS OPTION UNDER SUCH OPTION AGREEMENT AND SHALL REQUIRE THE PAYMENT OF THE OPTION PRICE THEREUNDER.

**Section 13. Indefinite and Perpetual Security Interest.** Grantor and Grantee intend to establish a perpetual or indefinite security interest in the Premises and any other collateral conveyed to secure the above-described Obligations in accordance with O.C.G.A. § 44-14-80.

**Section 14. Time of the Essence.** Time is of the essence with respect to each and every covenant, agreement and obligation of Grantor under this Deed to Secure Debt, the Bonds and any and all other deeds to secure debt now or hereafter evidencing, securing or otherwise relating to the Obligations.

**Section 15. Interest Not to Exceed Maximum Allowed by Law.** The parties hereto shall in no event be deemed to have contracted for a greater rate of interest than the maximum rate permitted by law. Should a greater amount be collected, it shall be construed as a mutual mistake of the parties and the excess shall be returned to the party paying same.

**Section 16. Headings.** The headings of the sections, paragraphs, and subparagraphs of this Deed to Secure Debt are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

**Section 17. Successors and Assigns.** The covenants, terms and conditions herein contained shall bind, and the benefits and powers shall inure to the respective heirs, executors, administrators, successors and assigns of the parties hereto. Whenever used herein, the singular number shall include the plural, the plural the singular, and the term "Grantee" shall include any payee of the indebtedness hereby secured and any transferee or assignee thereof, whether by operation of law or otherwise.

**Section 18. Governing Law.** This deed to secure debt shall be governed by and construed in accordance with the laws of the State of Georgia without regard to principles of conflict of laws. This Instrument shall be construed and enforced in accordance with the laws of the State of Georgia.

**Section 19. Severability.** If any provisions of this Deed to Secure Debt or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent under applicable law, the remainder of this Deed to Secure Debt and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

**Section 20. Non-Recourse; Reserved Rights of Grantor Protected.** Notwithstanding

anything in this Deed to Secure Debt to the contrary, IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT GRANTOR'S LIABILITY HEREUNDER OR ARISING HEREFROM IS LIMITED SOLELY TO ITS INTEREST IN THE PREMISES AND THE RENTS, REVENUES, RECEIPTS, ISSUES AND PROFITS GENERATED THEREFROM (OTHER THAN THE RESERVED RIGHTS, AS DEFINED IN THE RENTAL AGREEMENT, WHICH REMAIN WITH GRANTOR). NO AGREEMENT, COVENANT OR REPRESENTATION HEREIN CONTAINED SHALL EVER CONSTITUTE OR GIVE RISE TO ANY PECUNIARY LIABILITY OR CHARGE AGAINST THE GENERAL CREDIT OF GRANTOR OR AGAINST THE SERVANTS, AGENTS, DIRECTORS, MEMBERS OR EMPLOYEES OF GRANTOR. FURTHER, NONE OF THE DIRECTORS, MEMBERS, OFFICERS, EMPLOYEES OR AGENTS OF GRANTOR SHALL HAVE ANY PERSONAL LIABILITY HEREUNDER WHATSOEVER FOR THE BREACH BY GRANTOR OF ANY OF THE REPRESENTATIONS, COVENANTS OR AGREEMENTS ON ITS PART HEREIN CONTAINED. Expenses or liabilities incurred hereunder or pursuant hereto shall be the responsibility of Grantee and shall be added to the Indebtedness secured hereby. Nothing in this Section or elsewhere in this Deed to Secure Debt shall be construed as waiving, affecting or amending the Grantor's Reserved Rights. All rights, powers and remedies granted to the Grantee hereunder are expressly made subordinate to the Grantor's Reserved Rights in all respects.

**Section 21. General Conditions.** All covenants hereof shall be construed as affording to the Grantee rights additional to and not exclusive of the rights conferred under the provisions of applicable laws of the State of Georgia. This instrument cannot be altered, amended, modified or discharged orally and no agreement shall be effective to modify or discharge it in whole or in part, unless it is in writing and signed by the party against whom enforcement of the modification, alteration, amendment or discharge is sought. Acceptance of any payment after the occurrence of an Event of Default shall not be deemed to waive or cure such Event of Default. Every power and remedy given by this Deed to Secure Debt to the Grantee may be exercised from time to time as often as may be deemed expedient by Grantee. Nothing herein or in the Bonds shall affect the obligation of Grantor to pay the Obligations in the manner and at the time and place therein respectively expressed. No waiver by the Grantee will be effective unless it is in writing and then only to the extent specifically stated. Without limiting the generality of the foregoing, any payment made by the Grantee for insurance premiums, taxes, assessments, water rates, sewer rentals or any other charges affecting the Premises, shall not constitute a waiver of the Grantor's default in making such payments and shall not obligate the Grantee to make any further payments. The Grantor acknowledges that it has received a true copy of this Deed to Secure Debt. For the purposes of this Deed to Secure Debt, all defined terms and personal pronouns contained herein shall be construed, whenever the context of this Deed to Secure Debt so requires, so that the singular shall be construed as the plural and vice versa and so that the masculine, feminine or neuter gender shall be construed to include all other genders. No provision of this Deed to Secure Debt shall be construed against or interpreted to the disadvantage of the Grantor or the Grantee by any court or other governmental or judicial authority by reason of such party having or being deemed to have drafted, prepared, structured or dictated such provision. Whenever any payment to be made hereunder or under the Bonds, the Bond Resolution or the Rental Agreement shall be stated to be due on a day that is not a Business Day (as defined in the Bond Resolution), such payment may be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computation of payment of interest hereunder or under the Bonds or the Bond Resolution.

**Section 22. Notices.** Notices hereunder may be given in accordance with the provisions of the Bond Resolution.

[Signatures on Follow Page]
[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, Grantor has executed this Deed to Secure Debt under seal as of the day and year first above written.

GRANTOR

**DECATUR COUNTY-BAINBRIDGE INDUSTRIAL DEVELOPMENT AUTHORITY**

By: _____(SEAL)
                           Chair

Attest:

By: _____
                   Acting Secretary

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires:_____
[NOTARIAL SEAL]

[Signature Page – Security Deed and Agreement]

# EXHIBIT A

## DESCRIPTION OF LAND

## EXHIBIT B

## PROJECT DESCRIPTION

Land, buildings and furniture, fixtures and equipment for the production and related facilities of Safer Human Medicine, Inc. and related property financed or refinanced with the proceeds of the Bonds.

**EXHIBIT G**
PROJECT AGREEMENT
[SEE ATTACHED]