**PILOT AGREEMENT**

by and between

**SAFER HUMAN MEDICINE, INC.,**

and

**DECATUR COUNTY-BAINBRIDGE INDUSTRIAL DEVELOPMENT AUTHORITY
CITY OF BAINBRIDGE, GEORGIA
DECATUR COUNTY, GEORGIA
DECATUR COUNTY SCHOOL DISTRICT
DECATUR COUNTY TAX COMMISSIONER
DECATUR COUNTY BOARD OF TAX ASSESSORS**

**Effective Date:**

**January 1, 2024**

## PILOT AGREEMENT

**THIS PILOT AGREEMENT,** dated as of January 1, 2024 ("Effective Date"), as modified, supplemented, or amended from time to time ("Agreement"), is made by and between **SAFER HUMAN MEDICINE, INC.**, a Delaware corporation ("Company"), and the **DECATUR COUNTY-BAINBRIDGE INDUSTRIAL DEVELOPMENT AUTHORITY**, a public body corporate and politic established under the laws of the State of Georgia and a local development authority for Bainbridge, Decatur County, Georgia ("Authority"), the **CITY OF BAINBRIDGE, GEORGIA**, a municipal corporation of the State of Georgia ("City"), **DECATUR COUNTY, GEORGIA**, a political subdivision of the State of Georgia ("County"), the **DECATUR COUNTY SCHOOL DISTRICT** ("District"), the **DECATUR COUNTY TAX COMMISSIONER** ("Commissioner"), and the **DECATUR COUNTY BOARD OF TAX ASSESSORS** ("Tax Assessors"). The above-referenced entities may from time to time be referred to individually as a "Party" and collectively as "Parties," and the entities other than the Company may from time to time be referred to as "Public Authorities." Any capitalized terms not defined herein shall have the meanings provided in the hereinafter defined Rental Agreement, Bond Resolution, or Project Agreement, as applicable.

**W I T N E S S E T H**:

**WHEREAS**, the Company, and the Public Authorities, have entered into a Project Agreement dated December 11, 2023 ("Project Agreement") pursuant to which the Company has determined to locate a group of animal husbandry facilities and other related facilities and other building(s) and improvements totaling approximately 1.75 million square feet, as may be appropriate, on land located in Decatur County, Georgia, together with building fixtures, systems, machinery and building equipment, as more thoroughly described in the Project Agreement ("Project"); and

**WHEREAS**, in the Project Agreement, the Authority has agreed to acquire the Project Site (as defined in the Project Agreement) and to rent such Project Site to the Company pursuant to that certain Rental Agreement ("Rental Agreement"), to be executed by and between the Authority, as landlord, and the Company, as tenant, and in connection therewith the Authority agrees to issue the Bonds described in the Project Agreement in such amounts and at such times as shall be required to finance the Project, so that the Bonds, the Rental Agreement, this Agreement, and other related documents are implemented to achieve certain ad valorem tax benefits, including provision for the Company to make certain payments in lieu of taxes ("PILOT Payments") to the Authority in connection with the Project related to such ad valorem tax treatment, and for related purposes, as described in the Project Agreement and the other Bond Documents (as defined in the Bond Resolution); and

**WHEREAS**, the Authority's willingness to issue the Bonds and enter into the Rental Agreement to assist the Company with the acquisition, construction, installation, and equipping thereon of the real and personal property to be included in the Project, in furtherance of the benefits derived therefrom, are material factors considered by the Company in connection with its determination to locate the Project within the jurisdiction of the Authority; and

**WHEREAS**, the Public Authorities have been specifically authorized to negotiate the provisions of and to enter into the Project Agreement and this Agreement related to property tax savings and PILOT Payments related to the Project;

**WHEREAS**, on the Effective Date, the commitments contained in this Agreement shall become legally binding obligations of the Public Authorities, whose commitments are made in consideration for the Company's decision to locate the Project at the Project Site and its investment and employment

commitments; and

**WHEREAS**, the Authority has determined that by entering into and performing its obligations under the Project Agreement and hereunder, and by agreeing to enter into the Rental Agreement described above, it will be acting in furtherance of the public purposes for which it was created;

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all of the Parties hereto, the Parties do hereby agree as follows:

## ARTICLE I

### REPRESENTATIONS AND WARRANTIES; CONDITIONS PRECEDENT

**Section 1.1. Representations and Warranties of the Authority**. The Authority represents and warrants to the Company as follows:

(a)     The Authority is a public body corporate and politic and public instrumentality of the State, and a development authority duly created under and by virtue of the Constitution and laws of the State of Georgia, including specifically, but without limitation, that certain amendment to the Constitution of the State of Georgia, 1968 Ga. Laws 1780, as amended by 1981 Ga. Laws 3482 and as continued by 1985 Ga. Laws 3930 (collectively, "Act"), and, if and to the extent applicable, the Development Authorities Law of the State of Georgia (O.C.G.A. § 36-62-1 et seq.), as amended (collectively, "Act"); and

(b)     The Authority has the requisite power to execute, deliver and perform the terms and provisions of this Agreement and has taken all necessary action to authorize the execution, delivery and performance by it of this Agreement. This Agreement has been duly executed and delivered by the Authority and constitutes its legal, valid and binding obligation enforceable in accordance with its terms.

**Section 1.2. Representations and Warranties of the Tax Assessors**. The Tax Assessors warrant that it is legally constituted and its members are serving in accordance with the laws of the State of Georgia, and that it has been authorized by its Board of Commissioners to enter into this Agreement.

**Section 1.3. Representations and Warranties of the Commissioner**. The Commissioner warrants that it is legally constituted is serving in accordance with the laws of the State of Georgia, and is authorized to enter into this Agreement.

**Section 1.4. Representations and Warranties of the District**. The District warrants that it is legally constituted and its members are serving in accordance with the laws of the State of Georgia, and that it has been authorized by its Board of Education to enter into this Agreement.

**Section 1.5. Representations and Warranties of the City**. The City warrants that it is legally constituted and its council members are serving in accordance with the laws of the State of Georgia, and that it has been authorized by its City Council to enter into this Agreement.

**Section 1.6. Representations and Warranties of the County**. The County warrants that it is legally constituted and its commissioners are serving in accordance with the laws of the State of Georgia, and that it has been authorized by its Board of Commissioners to enter into this Agreement.

**Section 1.7. Right of Termination; Conditions Precedent to the Closing**. Prior to issuance of the Bonds and the consummation of the transactions required to implement the structure as set forth herein ("Closing"), it is acknowledged that the Company and the Authority each have the right to elect not to proceed with the Project and to terminate the Rental Agreement in the event certain conditions precedent to the Closing set forth in the Rental Agreement are not satisfied. If any Party has the right to terminate the Rental Agreement, such right shall also include the right to terminate this Agreement.

**Section 1.8. Independent Consideration**. Upon execution of this Agreement, the Company has delivered to the Authority, and the Authority acknowledges receipt of fifty dollars ($50.00) ("Independent Consideration") as consideration for Authority's execution, delivery and performance of this Agreement. The Independent Consideration is in addition to and independent of any other consideration provided for in this Agreement, is non-refundable and shall be retained by Authority notwithstanding any other provisions of this Agreement.

**Section 1.9. Approval; Execution**. The Public Authorities represent and warrant to the Company by the Public Authorities' execution of this Agreement, that the Public Authorities have approved this Agreement at one or more duly noticed and properly called public meeting(s), and have recorded the action so taken in the official minutes of such entity.

**Section 1.10. Effect of Termination**. If this Agreement is cancelled and terminated by the Company, as provided in this Article I, then upon any such cancellation and termination, no party shall have any further duties, obligations or liabilities hereunder, except for any such obligations that expressly survive any cancellation or termination hereof.

## ARTICLE II

## THE RENTAL AGREEMENT

**Section 2.1. General**. On the closing date, the Authority, as landlord, and the Company, as tenant, shall enter into the Rental Agreement with respect to the Project Site, as described in the Project Agreement. The Rental Agreement shall be in substantially the form set forth as Exhibit C to a Bond Resolution adopted by the Authority on December 11, 2023 ("Bond Resolution"), and as approved and acknowledged by the other Public Authorities also on December 11, 2023, subject to such changes as may be agreed upon by the Authority and the Company prior to the Closing Date.

**Section 2.2. No Taxation of Authority or Company Interests in Project**. Under the Act, the Authority is not required to pay ad valorem tax on its interest in the property comprising the Project. The Parties agree that the Rental Agreement is structured so that the Company's interest in the Project constitutes a usufruct, or, as to personal property, a nontaxable bailment for hire, and not a leasehold estate or a taxable estate for years. The Public Authorities have evaluated the Rental Agreement and have determined and hereby agree that the Company's interest in the Project under the Rental Agreement will constitute a usufruct, or, as to personal property, a bailment for hire, and such interests will not constitute a leasehold estate or a taxable estate for years. Thus, while the Rental Agreement is in effect, the Public Authorities have determined the exempt status of the Company's interest in the Project and represent, warrant and agree that the Company shall not pay *ad valorem* taxes on its interest in the Project; provided however, that in order to prevent the applicable taxing authorities from being deprived of revenues relating to the Project during the term of the Rental Agreement, the Company agrees that in consideration of the Project Agreement, this Agreement, the Rental Agreement and other benefits, it shall make PILOT Payments in the amounts and the manner as described in Exhibit A attached hereto subject to any adjustments pursuant to Article II of the Project Agreement.

**Section 2.3. Taxation Upon Termination of Rental Agreement**. If at any time the Rental Agreement is terminated with respect to the Project and the Company takes title thereto, the Project will be taxable according to normal ad valorem property taxation rules that are applicable to privately-owned property. In addition, to the extent the Company makes any capital expenditures in excess of the capital expenditures financed through one or more advance requests with respect to the outstanding Bonds, as of January 1 of any year during the term of the Rental Agreement, such excess capital expenditures shall be subject to normal ad valorem taxation. Early termination of the Rental Agreement will not affect any PILOT Payments on the Project for prior years.

## ARTICLE III

## <u>MISCELLANEOUS</u>

**Section 3.1 Governing Law**. This Agreement shall be governed and construed under the laws of the State of Georgia.

**Section 3.2 Notices**. All notices, approvals, consents, requests and other communications hereunder shall be in writing and shall be deemed to have been given when delivered by hand or mailed by first class registered or certified mail, return receipt requested, postage prepaid, or delivered by reputable courier (with charges prepaid), and addressed as follows, irrespective of such other addresses or office locations which a party has:

    If to the Company:

        Safer Human Medicine, Inc.
        21 Sheldon Road
        Cohasset, Massachusetts 02025
        Attention: David Johst, President and General Counsel
        Email: dave.johst@saferhm.com

    with concurrent copies to (does not constitute notice):

        Savills Inc.
        1252 Ingerson Road
        Arden Hills, Minnesota 55112
        Attn: Ms. Ann Marie Collins
        Email: ACollins@savills.us

        And

        Walter E. Jones, Esq.
        Balch & Bingham LLP
        Email: wjones@balch.com
        30 Ivan Allen, Jr. Boulevard NW
        Suite 700
        Atlanta, Georgia 30308
        Telephone:    404.962.3540

    If to the Authority:

        DECATUR COUNTY-BAINBRIDGE
            INDUSTRIAL DEVELOPMENT AUTHORITY
        P.O. Box 755
        Bainbridge, Georgia 39818
        Telephone:    229.246.4774

                Attention:   Executive Director
                Email:       rm@bainbridgedecaturga.com

and for each of the Public Authorities, with a copy to (does not constitute notice):

                King Kozlarek Law LLC
                Attention:   Michael E. Kozlarek, Esq.
                Email:       michael@kingkozlarek.com
                Post Office Box 565
                Greenville, South Carolina 29602-0565
                Telephone:   803.312.3199

COUNTY:        Decatur County, Georgia
                P. O. Box 726
                Bainbridge, Georgia 39818
                Telephone: 229-248-3030
                Facsimile: 229-246-2062
                Attention: Alan Thomas, County Administrator
                Email: athomas@decaturcountyga.gov

with concurrent copies to (does not constitute notice):

                Bruce W. Kirbo, Jr. Esquire
                Kirbo & Heckman Attorneys at Law LLC
                206 West Water Street
                Bainbridge, Georgia 39817
                Email: bkirbo@kirbolawyers.com

CITY:           City of Bainbridge, Georgia
                P. O. Box 158
                Bainbridge, Georgia 39818
                Telephone: 229-248-2005
                Facsimile: 229-246-7311
                Attention: Chris Hobby, City Manager
                Email: chrish@bainbridgecity.com

with concurrent copies to (does not constitute notice):

                Thomas B. Conger. Esquire
                Conger & Smith Attorneys at Law LLC
                218 East Water Street
                Bainbridge, Georgia 39817
                Email: tomconger@bellsouth.net

DISTRICT:      Decatur County School District
                100 South West Street
                Bainbridge, Georgia 39817
                Telephone: 229-248-2200
                Attention: Tim Cochran, Superintendent of Schools
                Email: tcochran@dcboe.com

|  |  |
|---|---|
| TAX ASSESSORS: | Decatur County Board of Tax Assessors<br>P. O. Box 1106<br>Bainbridge, Georgia 39818<br>Telephone: 229-248-3008<br>Facsimile: 229-248-3053<br>Attention: Amy Rathel, Chief Appraiser<br>Email: amy@decaturcountyga.gov |
| TAX COMMISSIONER: | Decatur County Tax Commissioner<br>P.O. Box 246<br>Bainbridge, Georgia 39818<br>Telephone: 229-248-3021<br>Facsimile: 229-248-3747<br>mharrell@decaturcountyga.gov |

The parties referred to above may, by notice given in the manner provided hereunder, designate any further or different addresses to which subsequent notices, approvals, consents, requests or other communications shall be sent or persons to whose attention the same shall be directed.

**Section 3.3 Binding Effect**. This Agreement shall inure to the benefit of and shall be binding upon the Authority and the Company, and their respective successors and assigns.

**Section 3.4 Intergovernmental Contract**. The provisions of this Agreement related to the determination of exemption and non-taxability of the Authority's and the Company's respective interests in the Project and administration of the PILOT Payments by the Authority and the provision of services by each as authorized by law shall collectively constitute an intergovernmental agreement under the Georgia Constitution Art. IX, Sec. III, Para. I by and between the Authority and the Tax Assessors. Such intergovernmental agreement is subject to the 50-year term limit contained in such provision of the Georgia Constitution but shall expire earlier upon its complete performance or at the end of the term of the Rental Agreement.

**Section 3.5 Severability**. If any provision hereof shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

**Section 3.6 Amendments**. This Agreement may not be amended or modified without the prior written consent of the Public Authorities and the Company (or the Company's successor or assign).

**Section 3.7 Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall together constitute one and the same instrument.

**Section 3.8 Captions**. The captions and headings herein are for convenience only and in no way define, limit or describe the scope or intent of any provisions hereof

**Section 3.9 Conflicting Provisions**. In the event that there exists a conflict between any term, condition, or provision contained within this Agreement, and in any term, condition, or provision contained within the Project Agreement, the term, condition, or provision contained within the Project Agreement shall control.

[SIGNATURE PAGES BEGIN ON FOLLOWING PAGE]

**DECATUR COUNTY-BAINBRIDGE**
**INDUSTRIAL DEVELOPMENT AUTHORITY**

Signed, sealed and delivered
in the presence of:

By: _____
Name: Keith Lyle
Title: Chairman

_____
Unofficial Witness

[SEAL]

_____
Notary Public

Commission Expiration Date: _____

[NOTARY SEAL]

[Signature page PILOT Agreement – Project Liberty]

DECATUR COUNTY SCHOOL DISTRICT

Signed, sealed and delivered
in the presence of:

By: _____
Name: Keith Lyle
Title: Chairman

_____
Unofficial Witness

[SEAL]

_____
Notary Public

Commission Expiration Date: _____

[NOTARY SEAL]

*Allison R. Godwin, COMM. EXP. NOTARY, Decatur County PUBLIC, 03-21-2027, State of GA*

[Signature Page DOT Agreement – Project Liberty]


**CITY OF BAINBRIDGE, GEORGIA**

Signed, sealed and delivered
in the presence of:

By: _____
Name: Edward Reynolds
Title: Mayor

_____
Unofficial Witness

[SEAL]

_____
Notary Public

Commission Expiration Date: _____

[NOTARY SEAL]

[Signature page PILOT Agreement – Project Liberty]

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public

Commission Expiration Date: _____

[NOTARY SEAL]

**DECATUR COUNTY TAX COMMISIONER**

By: _____
Name: Mark Harrell
Title: Tax Commissioner

[SEAL]

DECATUR COUNTY
BOARD OF TAX ASSESSORS

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public

Commission Expiration Date:

[NOTARY SEAL]

By: _____
Name: David J. Kendrick
Title: Chairman

[SEAL]

[Signature page PILOT Agreement – Project Liberty]

**DECATUR COUNTY, GEORGIA**

Signed, sealed and delivered
in the presence of:

By: _____
Name: Pete Stephens
Title: Chairman

_____
Unofficial Witness

[SEAL]

_____
Notary Public

Commission Expiration Date: _____

[NOTARY SEAL]

*Allison R. Godwin, Notary Public, Decatur County, State of GA, Comm. Exp. 03-21-2027*

[Signature page PILOT Agreement – Project Liberty]

## EXHIBIT A

PILOT Schedule

1. The Company and the Public Authorities anticipate the Company will make investment in two tranches, (a) beginning in calendar year 2024/2025 and ending in or before calendar year 2031/2032, and (b) beginning in calendar year 2031/2032 and ending in or before calendar year 2038/2039.

2. Each tranche of the Project will receive a 20-year property tax savings incentive beginning in the year, for the applicable tranche, in which property becomes subject to *ad valorem* real/personal property tax (as described in item 4, below). To calculate the payments in lieu of tax owed by the Company pursuant to this Agreement, the Applicable Percentage for the beginning year of the respective tranche is to be multiplied by the taxable value of the fee interest of the Project in such year at and after the initial investment in that applicable tranche has become subject to *ad valorem* property tax.

| Year | Applicable Percentage |
|---|---|
| 1-10 | 0% |
| 11 | 9% |
| 12 | 18% |
| 13 | 27% |
| 14 | 36% |
| 15 | 45% |
| 16 | 54% |
| 17 | 63% |
| 18 | 72% |
| 19 | 81% |
| 20 | 90% |
| 21 and thereafter | 100% |

3. The Company shall pay normal property taxes with respect to property not titled to the Authority, subject to other exemptions from taxation that may be available to the Company or as set forth in this Agreement otherwise.

4. Year 1, for the initial tranche of Capital Expenditures invested with respect to the Project (Tranche 1 Capital Investment), shall be the calendar year commencing on the January 1 following the year in which commercial production commences (or Leased Property is otherwise "placed in service") for the Tranche 1 Capital Investment. During construction of the initial tranche of Project Improvements and prior to the commencement of commercial production, there shall be no *ad valorem* taxes or payments in lieu of tax payable with regard to the initial tranche.

5. Year 1, for the additional tranche of Capital Expenditures invested with respect to the Project (Tranche 2 Capital Investment), shall be the calendar year commencing on the January 1 following the year in which commercial production commences (or Project is otherwise "placed in service") for the Tranche 2 Capital Investment. During construction of the additional tranche of Project Improvements and prior to the commencement of commercial production, there shall be no *ad valorem* taxes or payments in lieu of tax payable with regard to the additional tranche.