# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | |
|---|---|
| SAFER HUMAN MEDICINE, INC., | ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:24-cv-00027-LAG ) |
| DECATUR COUNTY-BAINBRIDGE INDUSTRIAL DEVELOPMENT AUTHORITY, | ) ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY JUNE FAIRCLOTH, CHAD DOLLAR, LISA DASILVA, AND KRISTINA MARTIN

June Faircloth, Chad Dollar, Lisa DaSilva, and Kristina Martin (collectively, the "Residents"), through their undersigned counsel, file this memorandum in support of their Motion to Intervene, showing the Court as follows:

**I.   INTRODUCTION**

Safer Human Medicine, Inc. ("SHM") commenced this action against one defendant, the Decatur County-Bainbridge Industrial Development Authority (the "Authority"), in a collusive action to obtain a consent judgment to pave the way for a 30,000-primate breeding facility that will be located adjacent to residential and agricultural properties in the Residents' community. The development project, known as "Project Liberty," was approved in secret by various representatives of local governments and the Authority, without input or approval of the taxpayers who would bear the risk and pay the cost of the project. Now faced with public opposition, and with litigation pending in other courts, SHM and the Authority are colluding to obtain an order from this Court blessing Project Liberty. *United States v. Johnson*, 319 U.S. 302, 304 (1943) (collusive suits "do[ ] not assume the 'honest and actual antagonistic assertion of rights to be

adjudicated—a safeguard essential to the integrity of the judicial process"). As of the date of this motion, the Authority even continues to promote Project Liberty on its website. *See* Exhibit A.

There are, however, actual controversies between SHM and a number of other entities who were not named as parties, but who clearly should have been. For example, the Residents, all of whom are taxpayers and residents of the City of Bainbridge (the "City") and Decatur County, Georgia (the "County") will suffer catastrophic losses if Project Liberty is allowed to proceed. They have already filed a lawsuit in the Superior Court of Decatur County against the City, the County, the Decatur County Board of Tax Assessors ("BOTA"), and the Decatur County School District (the "State Lawsuit"), which are the other "Public Parties" that SHM identifies as parties to the PILOT Agreement and Project Agreement for Project Liberty (collectively, the "Agreements").[1] As detailed more thoroughly in the attached pleadings filed in the State Lawsuit, the Residents allege that the Public Parties violated the Georgia Open Meetings Act, O.C.G.A. § 50-14-1 *et seq*. ("Open Meetings Act") when they voted to approve the contracts comprising Project Liberty, and therefore, the Agreements are not binding on the Public Parties. Pursuant to the Open Meetings Act "[a]ny resolution . . . or other official action" of any of the Defendants "adopted, taken, or made at a meeting which is not open to the public as required by the Act shall not be binding." O.C.G.A. § 50-14-1(b)(2). Significantly, two defendants in the State Lawsuit have reviewed the evidence and filed answers admitting that the Public Parties violated the Open Meetings Act.

---

[1] The State Lawsuit is styled *Dollar et al. v. City of Bainbridge, et al.*, Case No. 24CV00046. True and correct copies of the Residents' Complaint is attached as Exhibit B; Residents' Response in Opposition to SMH's Motion to Intervene is attached as Exhibit C; and Residents' Sur-Reply to SMH's Motion to Intervene is attached as Exhibit D.

None of the Public Parties are named in this action, even though SHM has made clear that it seeks an order from this Court stating that the Agreements are enforceable against each of them. Indeed, one of the many problems with this action, caused by SHM's purposeful avoidance of all other relevant parties, is that should this Court find that the Agreements are binding on the Public Parties, that finding would be inconsistent with Georgia law and with a consent judgment with the County that SHM is already trying to block in the State Lawsuit. (*See* Proposed Consent Judgment, attached as Exhibit E.) In this action, SHM surreptitiously seeks a completely different result against the County, without actually naming the County as a defendant, thus again denying the Court the opportunity to hear from all parties in interest.

Moreover, SHM is not entitled to the relief it seeks in this case because the District Attorney for the South Georgia Judicial District has appealed the Bond Validation Order, and as a result of that appeal, the Bond Validation Order is neither binding on nor conclusive against SHM or the Authority. *See* OCGA § 36-82-78 ("**If no appeal is filed within the time prescribed by law or if an appeal is filed and the judgment is affirmed on appeal**, the judgment of the superior court confirming and validating the issuance of the bonds and the security therefor shall be forever conclusive against the governmental body upon the validity of such bonds and the security therefor.") (Emphasis added.) And based on the District Attorney's enumerated errors in its appellate brief, it is likely that all, or at least some, of the Bond Validation Order will be vacated because the Authority did not comply with Georgia's Revenue Bond Law, O.C.G.A. § 36-82-60 *et seq.*, and because the Bond Validation Order included findings that are inconsistent with Georgia law. (*See* Appellate Brief of District Attorney, attached hereto as Exhibit F). Neither SHM nor the Authority have apprised this Court of the real possible outcomes of the appeal, and the impact of those outcomes on this proceeding.

4861-9029-9321.v3

Moreover, even if the Georgia Court of Appeals does not vacate the Bond Validation Order, if permitted to intervene, the Residents intend to argue as a defense to SHM's Complaint that the Bond Validation Order did not find that the unsigned Agreements were enforceable against the Public Parties. To the contrary, the Public Parties were specifically omitted from the Bond Validation Order. And even if the Agreements were enforceable, the Authority has already revoked its participation in Project Liberty, as it was permitted to do under the express terms of the PILOT Agreement. (*See* Compl. Exs. H, M, P and Q.)

Thus, for the reasons set forth herein, the Residents should be permitted to intervene in this action to file their proposed Answer, attached hereto as Exhibit G, and to assert their defenses to SHM's Complaint.

**II.    ARGUMENT**

**A.    THE CITIZEN PARTIES SHOULD BE PERMITTED TO INTERVENE IN ORDER TO DEFEND THEIR INTERESTS IN THIS ACTION**

There are two mechanisms by which a non-party may intervene and participate in an action pending in the district court: intervention as of right and permissive intervention. *See* Fed. R. Civ. P. 24(a)(2) ("On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."); Fed. R. Civ. P. 24(b)(1) ("On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."). Here, both mechanisms support the Residents' Motion.

4

### 1. The Citizen Parties Should Be Permitted to Intervene as of Right

A party seeking intervention as of right pursuant to Rule 24(a)(2) must show that "(1) [its] application to intervene is timely; (2) [it] has an interest relating to the property or transaction which is the subject of the action; (3) [it] is so situated that disposition of the action, as a practical matter, may impede or impair [its] ability to protect that interest; and (4) [its] interest is represented inadequately by the existing parties to the suit." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Each of these factors supports the Residents' request to intervene as of right.

#### a. The intervention is timely.

The Residents' motion to intervene is timely. This case is in its infancy, and the Authority has not yet even filed an Answer to the Complaint.[2] Discovery has yet to commence, and no trial date has been set. *See Chiles*, 865 F.2d at 1213 (motion to intervene timely where it was filed only seven months after complaint, three months after a motion to dismiss was filed, and before discovery had begun). The Residents' timely intervention at the inception of this case will not cause delay or prejudice to the parties. To the contrary, permitting the Residents to intervene is likely to streamline the proceedings because it will promote clarity and the resolution of claims relating to the Agreements that SHM seeks to enforce.

---

[2] Presently, this case is stayed, until the later of the termination of the Appeal of the Bond Validation Order or 120 days from the date of the Court's February 26, 2024 Order [ECF-10]; however, given the importance of affording the Residents' ability to protect their interests in this case, and the complexity of the interplay between this case, the State Lawsuit, and the Appeal, the Residents contend that their intervention is timely and appropriate. Indeed, based on the Residents' review of the pleadings already filed by SHM and the Authority, failing to timely intervene could result in a judgment rife with errors of law and fact since it is likely that the Authority has colluded with SHM to immediately file a consent judgment if any portion of the Bond Validation Order is affirmed.

4861-9029-9321.v3

      b. <u>The Residents have interests relating to the transaction which is the subject of the action.</u>

The Residents have significant protectable interests in this litigation, which include protectible interests in: 1) the expenditure of their tax payments; 2) the proper administration of community funds and assets by their local governments; 3) the economic development and economic viability of the City and County; 4) in preventing further damage to their properties; 5) keeping their community safe and free of transmittable diseases and pollution; and 6) maintaining property values in their community. Finally, they have a significant interest in protecting their interests in the State Lawsuit, and avoiding an erroneous judgment here—due to incomplete facts—that may conflict with the judgment of the state court.

The Residents are also likely to prevail on the defenses they will assert to protect their interests. First, SHM has alleged that the Agreements are enforceable against the Public Parties, which contradicts the allegations and relief sought in the State Lawsuit. Indeed, the County and the BOTA have already admitted that they did not comply with certain provisions of the Georgia Open Meetings Act, and the County and Residents have requested entry of a consent judgment in the State Lawsuit. *See* Ex. D. To allow this case to continue without regard to the Residents' claims in that case, and without regard to the answers filed by the BOTA and County would be error, and could further lead to conflicting outcomes between this Court and the state court.

Second, the Residents should be permitted to argue that even if the Bond Validation Order itself is not fully vacated, any purportedly validated documents expired on February 29, 2024.[3] And, because of that expiration, the Bonds cannot now be issued without a new validation

---

[3] The only version of the Project Agreement that was validated by the Decatur County Superior Court expired on February 29, 2024. The Residents recognize that this Court may extend deadlines for contracts, but those changes are not validated because validation is a power expressly reserved for the Superior Court in Georgia. *See* O.C.G.A. § 36-82-75.

proceeding to which the Residents would have a right to intervene pursuant to O.C.G.A. § 36-82-77.  Further still, the Residents will argue as a defense to the issuance of the Bonds that under the terms of the PILOT Agreement, the Authority voted to revoke the Bond Resolution and withdraw its participation in Project Liberty, which is a permissible action under Section 1.7 of the PILOT Agreement that undermines SHM's arguments.

Third, if the Bond Validation Order is not vacated, the Residents intend to argue that SHM overstates the scope of the validation, and that the Bond Validation Order would have, at most, validated unsigned forms of the Agreements.  The Bond Validation Order found only that the Agreements, once executed, would be binding and enforceable against SHM and the Authority, but any finding of enforceability was omitted with respect to the Public Parties.

Fourth, since, as discussed below, there is significant evidence that the Authority has colluded with SHM to obtain a binding order from this Court as to the enforceability of the Agreements—as to not only the Authority but also the Public Parties—the Residents should also be permitted to assert a defense that there is no justiciable controversy in this case, at least as between the two currently-named parties.

### c. The disposition of the action may impede or impair the Residents' ability to protect their interests.

The Residents will be impeded and impaired by a ruling in this litigation that conflicts with relief sought and the potential findings of their pending claims in the State Lawsuit.  Moreover, the Residents will be impeded and impaired if they are not permitted to assert the defenses discussed above, some of which are dispositive of this action as a whole, and some of which are dispositive as to the Public Parties.  Moreover, if the Residents are not permitted to intervene, their ability to protect their own properties and economic interests will be impaired since property

7

owners, including the Residents, have already suffered documented economic losses as a result of the Project and face future potential environmental damages and health risks.

### d. The Residents' interests are not represented.

Finally, the Residents interests here are not represented. *See Chiles*, 865 F.2d at 1214 (stating that to demonstrate that an interest is represented inadequately by the existing parties to the suit requires only a "minimal" showing "that representation of [one's] interest 'may be' inadequate"). Indeed, the Residents have reason to believe that the Authority will not mount any real defense here to SHM's claims, and that it instead intends to consent to a judgment in this case as quickly as possible if the Court of Appeals does not vacate the Bond Validation Order in its entirety. Mr. Kozlarek, the Authority's attorney here, represents the City in the State Lawsuit, and the City is defending SHM's positions in that case. As further evidence of the collaborative relationship between the City, the Authority, and SHM, the City, in the State Lawsuit, is making nearly identical arguments to those that SHM is making here, including that the Bond Validation Order is valid and conclusive, even though it has been appealed.[4]

It also cannot be ignored that neither the Authority nor the City has acknowledged, in either this action or the State Lawsuit that their attorney, Mr. Kozlarek, provided legal counsel to the Authority in a formal vote to revoke the Bond Resolution and withdraw its participation in Project Liberty. Mr. Kozlarek then filed a pleading advising the state court of the Authority's vote to withdraw from Project Liberty, which implicitly confirmed that the Authority had elected *not* to close on the project before the February 29, 2024 deadline established in the Project Agreement, which the Authority was expressly permitted to do under Section 1.7 of the PILOT Agreement.

---

[4] Despite filing a pleading in the Superior Court acknowledging that the Authority had elected not to proceed with the Bond transaction, Mr. Kozlarek, on behalf of the Authority, also has consented to oral argument in the Appeal of the Bond Validation Appeal, another apparent contradiction.

8

Yet, rather than make dispositive arguments based on the Authority's affirmative vote to withdraw from Project Liberty, the City and Authority are ignoring key contract provisions that demonstrate that Project Liberty is dead, and instead have elected to take steps to defend the Bond Validation Order and actively cooperate with SHM to continue the development of Project Liberty in direct contradiction of the Authority's vote. *See* Exhibit A. It is beyond dispute that the Authority is not protecting the Residents' interests.

### 2. In the Alternative, the Court Should Grant the Residents' Request for Permissive Intervention

If the Court determines that intervention as of right is not warranted, the Residents should still be allowed to intervene under the permissive intervention standard of Rule 24(b)(1). Permissive intervention is appropriate in cases where the movant has timely filed its motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Permissive intervention only "requires an interest sufficient to support a legal claim or defense." *Nationwide Mut. Fire Ins. Co. v. Waddell*, No. 5:04-CV-429, 2005 WL 2319698, at *3 (M.D. Ga. Sept. 22, 2005) (quoting *Laube v. Campbell,* 215 F.R.D. 655, 659 (N.D. Ala. 2003)). The Residents meet these requirements.

SHM seeks to enforce the Agreements against the Public Parties but has intentionally failed to name all of the relevant Public Parties as defendant. Moreover, SHM seeks the blessing of this Court notwithstanding that the Residents are seeking a declaration in the State Lawsuit that the Agreements are not binding on the Public Parties because they failed to comply with the Open Meetings Act. SHM also alleges that the Bond Validation Order is binding on the Public Parties, notwithstanding that the Public Parties were not parties to the Bond Validation Proceedings and there were no findings as to the Public Parties in the Bond Validation Order. Finally, as a matter of law and fact, the Agreements are no longer binding on the Public Parties or the Authority

because the PILOT Agreement provided that the Authority could withdraw its participation in Project Liberty before closing on the Bonds, and the Authority did so. Accordingly, any further action with respect to any future bond issuance would require a new validation proceeding, and the Residents would have a right to intervene in that proceeding pursuant to O.C.G.A. § 36-82-77, a right they were effectively denied previously.

For the forgoing reasons, the Residents' defenses against SHM's claims share common questions of law and fact. Accordingly, to deny the Residents' motion to intervene would not merely prejudice the Residents but result in manifest injustice, as well as inconsistent and erroneous outcomes.

### III. CONCLUSION

The Residents meet the requirements for intervention as of right and permissive intervention, and therefore the Court should grant the Residents' motion to intervene in this matter. In the interest of conserving both judicial and party resources, as well as ensuring consistent and final determination of key issues relating to the Residents' rights, the Residents respectfully requests that the Court grant their motion to intervene.

Dated:   April 25, 2024                    ARNALL GOLDEN GREOGRY LLP

By: /s/ Rebecca A. Davis
    Rebecca A. Davis
    Georgia Bar No. 141711
    Jennifer Shelfer
    Georgia Bar No. 557213
    171 17th Street, N.W., Suite 2100
    Atlanta, GA 30363
    Telephone:  404.873.8646
    rebecca.davis@agg.com
    jennifer.shelfer@agg.com

    *Attorneys for June Faircloth, Chad Dollar, Lisa DaSilva, and Kristina Martin*

## **CERTIFICATE OF SERVICE**

I certify that on April 25, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

/s/ Rebecca A. Davis
Rebecca A. Davis